

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

**17    4495**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.    *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

McCRACKEN; TED A.

**DEFENDANTS**

R.J.REYNOLDS TOBACCO COMPANY ; et al.,

**(b)** County of Residence of First Listed Plaintiff  Philadelphia
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Forsyth
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
ted A. McCracken
3143 N. Carlisle Street
Philadelphia, PA  19132

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
Plaintiff

☐ 3  Federal Question
*(U.S. Government Not a Party)*

☐ 2  U.S. Government
Defendant

☒ 4  Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                        *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 791 Employee Retirement Income Security Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1  Original
Proceeding

☐ 2  Removed from
State Court

☐ 3  Remanded from
Appellate Court

☐ 4  Reinstated or
Reopened

☐ 5  Transferred from
Another District
*(specify)*

☐ 6  Multidistrict
Litigation -
Transfer

☐ 8  Multidistrict
Litigation -
Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. 1332
Brief description of cause:
Product Liability-tobacco/defective/personal injury

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, F.R.Cv.P.

DEMAND $ 50,000,000,00

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☒ Yes    ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE

DOCKET NUMBER  OCT 10 2017

DATE  10/2/2017

SIGNATURE OF ATTORNEY OF RECORD
*(signature)*

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

**UNITED STATES DISTRICT COURT**                    17    4495

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: 3143 N. Carlisle Street, Philadelphia, PA 19132

Address of Defendant: R.J. REYNOLDS, 401 N. Main St., Winston-Salem, NC 27101-3804

Place of Accident, Incident or Transaction: Pennsylvania, New York, & New Jersey
(Use Reverse Side For Additional Space)

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))                    Yes☐  No☑

Does this case involve multidistrict litigation possibilities?                    Yes☐  No☑
*RELATED CASE, IF ANY:*
Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
                    Yes☐  No☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
                    Yes☐  No☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?                    Yes☐  No☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
                    Yes☐  No☑

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify) _____

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☑ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
    (Please specify) _____

**ARBITRATION CERTIFICATION**
*(Check Appropriate Category)*
I, _____ counsel of record do hereby certify:
    ☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;
    ☐ Relief other than monetary damages is sought.

DATE: _____    _____    _____
                    Attorney-at-Law                    Attorney I.D.#
    NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.                    OCT 10 2017

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 10/18/2017    _____    Ted A. McCracken
                    Attorney-at-Law                    Attorney I.D.#
                    Pro se Plaintiff

CIV. 609 (5/2012)



## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

Ted A. McCracken,                    :          CIVIL ACTION
                    Plaintiff,       :
          v.                         :
R.J.REYNOLDS TOBACCO COMPANY, et sl.,:
                    Defendant(s).    :          NO. **17    4495**

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.          ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.          ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.    ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.          ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court. (See reverse side of this form for a detailed explanation of special
    management cases.)          ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.          (X)

|  |  |  |
| --- | --- | --- |
| 10/ /2017 | Ted A. McCracken, pro-se | |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-500-2456 | : | mccracken.theodore@yahoo.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

OCT 10 2017

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

---

TED A. McCRACKEN,
        Plaintiff,          :

                      :

    – against –           :          JURY TRIAL DEMANDED

R.J.REYNOLDS TOBACCO COMPANY,   :

DEBRA CREW, President/Chief Executive  :
Officer, R.J.REYNOLDS TOBACCO COMPANY,
successor,               :       Index No. **17   4495**

ITG BRANDS LLC.,           :

DAVID H. TAYLOR, President/Chief Executive :
Officer, ITG BRANDS LLC., successor,

REPUBLIC TOBACCO INC.,        :

DONALD LEVIN, President/Chief Executive :
Officer, REPUBLIC TOBACCO INC., successor,
         Defendant(s).       :

---

## COMPLAINT

Plaintiff, TED A. McCRACKEN, alleges:

### I.

### General Allegations

1.  Ted A. McCracken is the plaintiff in the aforecaptioned action.

2.  The following cigarette/tobacco manufacturer executive defendant(s) are

DEBRA CREW, the President/Chief Executive Officer of R.J.REYNOLDS TOBACCO

COMPANY (401 N. Main Street, Winston-Salem, NC  27101-3804), successor;

DAVID H. TAYLOR, the President/Chief Executive

1

Officer of ITG BRANDS LLC. (714 Green Valley Road, Greensboro, NC 27408-7018) successor;

and DONALD LEVIN the President/Chief Executive Officer of REPUBLIC TOBACCO INC. (2301

Ravine Way, Glenview, IL 60025), successor.

3. The following "cigarette/tobacco manufacturer defendants" are R.J. REYNOLDS TOBACCO

CO. ("manufacturer of Newport cigarettes"), ITG BRANDS, LLC. ("manufacturer of KOOL

cigarettes"), REPUBLIC TOBACCO INC. ("manufacturer of TOP cigarette tobacco) are foreign

corporations, who at times material to this action designed, manufactured, advertised,

marketed, and sold cigarette tobacco products for human consumption, which proximately

caused severe physical injury to the plaintiff, including, but not limited to Chronic Obstructive

Pulmonary Disease (COPD), asthma and emphysema.

4. Defendant R.J.REYNOLDS TOBACCO CO. (401 N. Main Street, Winston-Salem, NC

27101-3804) manufacturer and seller of Newport cigarettes, is incorporated in North Carolina

and a registered business corporation entity (No. 3213966) in Pennsylvania, with a registered

agent listed as CORPORATION SERVICE COMPANY, Dauphin County, PA with address at 2595

Interstate Drive, Suite 103, Harrisburg, PA. Process service can be accomplished by serving a

summons and complaint on the registered agent, CORPORATION SERVICE COMPANY, 2595

Interstate Drive, Suite 103, Harrisburg, PA 17110.

5. On knowledge and belief, defendant R.J. REYNOLDS TOBACCO COMPANY purchased

the Newport brand from another cigarette manufacturer LORILLARD TOBACCO COMPANY on

June 12, 2015. As a result of the merger, defendant R.J. REYNOLDS TOBACCO COMPANY is

now property owner of the Newport brand and succeeded to the liabilities of LORILLARD

TOBACCO COMPANY, including liability in tort for the negligence, defective products,

conspiracy, breach of warranty of merchantability, misrepresentation and concealment

2

regarding products manufactured by LORILLARD TOBACCO COMPANY.

6. Defendant ITG BRANDS LLC, (714 Green Valley Road, Greensboro, NC 27408-7018) manufacturer and seller of KOOL cigarettes, is incorporated in Texas and a registered business corporation entity (No. 4191104) in Pennsylvania, with a registered agent in PA, listed as CORPORATION SERVICE COMPANY, Dauphin County, Pennsylvania. Process service can be accomplished by serving a summons and complaint on the registered agent, CORPORATION SERVICE COMPANY, 2595 Interstate Drive, Suite 103, Harrisburg, PA 17110.

7. On knowledge and belief, defendant ITG BRANDS LLC purchased the KOOL cigarette brand from another cigarette manufacturer REYNOLDS AMERICAN and the KOOL brand became the property of ITG BRANDS LLC. (subsidiary of Imperial Tobacco Company). As a result of the merger, defendant ITG BRANDS LLC succeeded to the liabilities of REYNOLDS AMERICAN including liability in tort for the negligence, defective products, conspiracy, breach of warranty of merchantability, misrepresentation and concealment regarding products manufactured and sold by REYNOLDS AMERICAN.

8. Defendant REPUBLIC TOBACCO INC. ("manufacturer of TOP cigarette tobacco") is incorporated in the state of Illinois (File No. 50132285) with a registered agent listed as Alan M. Berry, 525 W. Monroe Street, Suite 1600, Chicago, IL 60606. Process service can be accomplished by serving a summons and complaint on the registered agent, Alan M. Berry, 525 W. Monroe Street, Suite 1600, Chicago, Illinois 60606.

9. On the basis of knowledge and belief, defendant REPUBLIC TOBACCO INC. purchased the TOP cigarette tobacco brand from another cigarette tobacco company, R.J. REYNOLDS, Winston-Salem, NC in 1987, and the TOP brand became the property of REPUBLIC TOBACCO INC. As a result of the purchase, defendant REPUBLIC TOBACCO INC. succeeded to the

3

liabilities of R.J. REYNOLDS, including liability in tort for the defective products, negligence, conspiracy, breach of warranty of merchantability, misrepresentation and concealment for products manufactured and sold by R.J. REYNOLDS, 401 N. Main Street, Winston-Salem, NC 27101-3804.

10.  In 1968, at the age of 15, plaintiff started using KOOL cigarettes, TOP cigarette tobacco, and Newport cigarettes consuming between one (1) and two (2) packs per day (i.e. twenty (20) to forty (40) cigarettes per day).

11.  In November, 2015, plaintiff Ted A. McCracken was diagnosed by a pulmonologist in Philadelphia with Chronic Obstructive Pulmonary Disease (COPD), asthma and emphysema.

12.  This is an action for damages in excess of $50,000,000.00.  Cigarette manufacturer defendants are subject to the jurisdiction of this court pursuant to diversity and other statutes, because at times material to this action:

    a.  Plaintiff Ted A. McCracken resided in Pennsylvania since 1998, and prior to 1998, in New York and New Jersey.  Plaintiff currently resides at 3143 N. Carlisle Street, Philadelphia, PA 19132.

    b.  Defendants operated, conducted, engaged in, or carried on a trade, business, or business venture within Pennsylvania, New York and New Jersey, namely, the distribution and sale of cigarettes products which trade, business or business venture is connected to or incidental to the matters of this suit.

    c.  Defendants were in engaged in substantial and not isolated activities in Pennsylvania, New York and New Jersey.

    d.  Defendants had an office or agency in Pennsylvania, New York,  and New Jersey.

    e.  Defendants transacted business from a business office in Pennsylvania, New York

4

and New Jersey.

f.  Defendants, through brokers, jobbers, wholesalers, or distributors, sold a product or products that caused harm to persons in Pennsylvania, New York, and New Jersey.

g.  Defendants conducted advertising activities in Pennsylvania, New York and New Jersey.

h.  Defendants intentionally availed themselves of the Pennsylvania, New York and New Jersey market; and

i.  Defendants conducted other activities presently unknown in Pennsylvania, New York and New Jersey, which subjects them to jurisdiction.

13.  Plaintiff purchased and used cigarette products designed, manufactured, advertised, and marketed by defendant cigarette tobacco manufacturers, and sold by defendants at times material to this complaint.

14.  Defendants' cigarette products, when used as intended, were highly likely to cause, or contribute to in substantial fashion, the following illnesses, injuries and conditions:

a.  Brochogenic carcinoma or lung cancer of all types.

b.  Chronic obstructive pulmonary disease of all types, including asthma, emphysema, chronic bronchitis, and reversible airway obstruction.

c.  Cardiovascular disease, including atherosclerosis and its consequences, including myocardial infarction (heart attack), cerebrovascular accident (stroke), peripheral vascular disease, aneurysm, and other conditions.

d.  Cancers of the kidney, bladder, brain, larynx, and other organs.

e.  Genetic damage to cells of the airways, lungs, and other organs.

f.  Impairment of lung function.

g. Other types of injuries.

15. So highly likely were the serious health consequences of defendants' cigarette products that over one in three foreseeable users would be expected to suffer premature death or serious impairment.

16. At all material times, the ordinary consumer, including the plaintiff, did not, in the exercise of ordinary diligence, know of the likelihood of, the severity of, or the risks from defendants' cigarette products, which risks are outlined above.

17. Defendants' cigarette products, when used as intended, were likely to induce in foreseeable users a state of addiction, habituation, habit formation, or dependence, characterized by the users' great difficulty in terminating or restricting their chronic use.

18. The risks of harm to foreseeable users, as listed in the above paragraphs, would increase in any of the following circumstances:

a. Greater cumulative consumption, including the rate of consumption and length of time the product was consumed.

b. Beginning use at an early age in life.

19. At all material times, defendants conducted an aggressive marketing and advertising campaign intending to induce, encourage, suggest, and reinforce foreseeable users to purchase their cigarette products. Such marketing and advertising occurred in printed media, on television, radio, billboards, and by other means.

20. Plaintiff purchased and used defendants' cigarette products within Pennsylvania, New York and New Jersey.

21. Plaintiff used defendants' cigarette products in the intended manner and without significant change in their condition from purchase.

6

22. Plaintiff was induced to purchase the cigarette products, relied on defendants' superior knowledge regarding cigarette products, and was impliedly or expressly instructed in their use by defendants' advertising, marketing and other efforts.

23. As a direct and proximate result of plaintiff's use of defendants' cigarette products, plaintiff suffered bodily injury, namely: emphysema, asthma and chronic obstructive pulmonary disease and other injuries.

II.

Negligence

24. The allegations set forth in Paragraphs 1 through 23 are incorporated by reference and realleged as if expressly set forth.

25. Defendant cigarette manufacturers actually knew, or in the discharge of ordinary care, should have known, of the following:

a. The harms listed in Paragraphs 14, 15 and 17 would or might occur if the products were used as intended.

b. The harms listed above would more likely be experienced if users did not restrict their intake of defendants' cigarette products, or if they began to use the products at an early age.

c. Use of the products as intended was likely to lead to addiction, habituation or dependence.

d. Termination or limitation of use would be exceedingly difficult if consumption was initiated, and this difficulty would increase as cumulative consumption increased.

e. Developing knowledge before and after 1970 demonstrated that previous users are at

7

great risk of harm (as listed in Paragraphs 14, 15 and 17) and should seek medical monitoring.

f. Defendants could test and evaluate the cigarette product for harmful or addictive properties and establish a reasonably safe dose for foreseeable users.

g. There were feasible improvements in the design, composition or manufacture of the cigarette products so as to materially decrease the foreseeable risk to users.

26. Defendants had the following legal duties to users who consumed their cigarette products:

a. A duty to foreseeable users of defendants' cigarette products to warn of the likelihood, probability or foreseeability that the harm listed in Paragraphs 14, 15 and 17 would or might occur if the products were used as intended.

b. A duty to foreseeable users to warn that the harm listed above would be more likely experienced if users did not restrict their intake of defendants' cigarette products, or to provide some guidelines on reasonably safe dosage or amount of consumption, and a duty to warn that use of the product at an early age was harmful.

c. A duty to warn foreseeable users that use of the product as intended was likely to lead to addiction, habituation, or dependence.

d. A duty to warn users that termination or limitation of use would be exceedingly difficult if consumption was initiated and that this difficulty would increase as cumulative consumption increased.

e. A continuing duty to warn previous users of developing knowledge demonstrating that previous users are at a great risk of harm (as set forth in Paragraphs 14, 15 and 17), and should seek medical monitoring.

8

f. A duty to test, evaluate, and conduct scientific research on defendants' cigarette products for harmful or addictive properties, and to establish a reasonably safe dose for foreseeable users.

g. A duty to design, manufacture, and sell a product that, when used as intended, was reasonably safe for foreseeable users.

h. A duty to make such feasible improvements in design, composition, or manufacture of cigarette products as to materially decrease the foreseeable risk to users.

i. A duty to disclose to consumers of defendants' cigarette products the results of their own and other scientific research known to them which indicated that use of the cigarette products exposed users to a great risk of harm (as listed in Paragraphs 14, 15 and 17).

j. A duty to warn previous users, users and foreseeable users through nonadvertising and nonpromotional communications of the dangers listed in Paragraphs 14, 15 and 17).

k. Defendants negligently breached one or more of the duties to users, including plaintiff, Ted Aaron McCracken, in one or more of the following ways:

a. In failing to warn or warn adequately of the likelihood, probability or foreseeability that the harms listed in Paragraph 14, 15 and 17 would or might occur if the products were used as intended.

b. In failing to warn or warn adequately that the harm above would be more likely experienced if users did not restrict their intake of defendants' cigarette products, or in failing to provide some guidelines on reasonably safe dosage amount of consumption, or in failing to warn that use of the product at an early age was exceedingly harmful.

c. In failing to warn or warn adequately that use of the product as intended was likely to

9

lead to addiction, habituation or dependence.

d. In failing to warn or warn adequately that termination or limitation of use would be exceedingly difficult if consumption was initiated and that this difficulty would increase as cumulative consumption increased.

e. In failing to warn or warn adequately of developing knowledge demonstrating that previous users are at great risk of harm (as set forth in Paragraphs 14, 15 and 17) and should seek medical monitoring.

f. In failing to test, test adequately, or conduct scientific research on their cigarette products for harmful or addictive properties, and in failing to establish a reasonably safe dose for forseeable users.

g. In designing, manufacturing, and selling a product that when used as intended was not reasonably safe for foreseeable users.

h. In failing to make such feasible improvements in design, composition, or manufacture of its cigarette products so as to materially decrease the foreseeable risk to users.

i. In failing to disclose to plaintiff and other foreseeable users of their cigarette products of defendants' own scientific and other scientific research known to them which disclosed that use of cigarette products as intended caused a great risk of harm as described in paragraphs 14, 15 and 17.

j. In failing to warn or adequately warn previous users, users, and foreseeable users through nonadvertising and nonpromotional communications of the dangers described in Paragraphs 14, 15 and 17.

10

III.

## Strict Liability

27.  The allegations set forth in Paragraphs 1 through 26 are incorporated by reference and realleged as if expressly set forth.

28.  Defendants' cigarette products were defective and unreasonably dangerous to foreseeable users for the following reasons:

a.  The cigarette products when used as intended caused or contributed to the illnesses listed in Paragraphs 14, 15 and 17.

b.  The cigarette products were addictive, habituating, habit-forming, and once used caused physical and psychological dependence.

c.  The cigarette products failed to perform as safely as an ordinary consumer would expect when used as intended or in a manner reasonably foreseeable by the plaintiff.

d.  The risk of danger from the design of defendants' cigarette products outweighed the benefits obtained with use of the products.

e.  Defendants' cigarette products failed to contain sufficient warnings, as alleged above, or, alternatively, were labeled with inadequate warnings.

f.  Defendants' cigarette products failed to contain sufficient instructions for use or for safer use, including but not limited to the following:

(1)  Directions to smoke fewer cigarettes.

(2)  Directions on how to smoke to reduce carcinogen dosage.

(3)  Directions to avoid blocking vent holes.

(4)  Directions to attempt to quit smoking.

11

(5)  Directions to use lower tar cigarettes.

(6)  Directions to avoid compensatory smoking.

(7)  Directions regarding the uncertainty of health — in low yield (CO, tar, and nicotine) cigarettes.

(8) Directions to avoid smoking entire cigarettes.

(9)  Directions to avoid exceeding the addictive threshold.

(10)  Directions to avoid smoking while in the presence of children.

(11)  Directions to seek regular physical examination.

29.  The cigarettes were otherwise defective in design in one or more of the following respects:

a.  Insufficient reduction in tar and other carcinogens by dilution and filtration.

b.  Lack of distinctly marked vent holes.

c.  Lack of "stop smoking" markings.

d.  Excessive nicotine delivery.

e.  Failure to utilize substitute or expanded cigarette.

f.  Failure to utilize smaller cigarettes.

g.  Failure to package fewer cigarettes per pack.

h.  Failure to contain product information data sheets.

i.  Failure to list accurately and legibly the ingredients contained within the cigarette and the smoke including known carcinogens.

12

## IV.

### Civil Conspiracy

30. The allegations set forth in Paragraphs 1 through 29 are incorporated by reference and

realleged as if expressly set forth.

31. Defendants' DEBRA CREW, President and Chief Executive Officer, R.J.REYNOLDS TOBACCO

COMPANY, successor; DAVID H. TAYLOR, President and Chief Executive Officer, ITG BRANDS

LLC, successor; DONALD LEVIN, President and Cheif Executive Officer, REPUBLIC TOBACCO

INC., successor, R.J. REYNOLDS TOBACCO COMPANY, ITG BRANDS LLC, REPUBLIC TOBACCO

INC., participated in a civil conspiracy, the purposes of which are detailed below.

32. The civil conspiracy existed at all material times to this lawsuit, and continues to exist at

the present time.

33. The purposes of the conspiracy were to:

a. Intentionally suppress or conceal knowledge of the harmful effects of cigarette

smoking from the public, the press, and the government, including the plaintiff.

b. Intentionally frustrate the flow of information from the medical and scientific community to

the general public on the health risks and addictive nature of cigarettes.

c. Purposefully create an illusion of conducting scientific research on cigarettes so as to

mislead the public into believing that cigarettes were safe to smoke, when in reality no

such bona fide research was ever conducted.

d. Knowingly and intentionally lie to, deceive, and improperly influence law and policy makers in

local, state and national government in order to avoid or control regulation of the sale of

cigarettes/cigarette products to the consumer, including the plaintiff.

e. Knowingly and intentionally lie to, deceive, and improperly influence physicians, health

13

workers, teachers, and others in the community to subvert these persons' belief in the dangers

of cigarette smoking, so as to minimize the instructions and recommmendations on

smoking cessation that would otherwise have been forthcoming to the public, including the

plaintiff.

f. Knowingly and intentionally sell cigarettes to minors to ensure a future lucrative

market for cigarettes as older smokers died.

g. Purposefully create the illusion that a medical and scientific "controversy" existed as to

whether or not cigarettes were harmful to human health, when no such controversy

existed, so as to encourage the public to start or to continue smoking cigarettes.

34.  The conspirators agreed to carry out the purposes of the conspiracy, as listed above.  The

conspirators participated in and cooperated with each other in the conspiracy.  Each act of the

conspiracy was ratified by other coconspirators, who acted as each other's agents.

35.  Over the years the conspirators, acting in concert, performed numerous overt acts to further

the purposes of the conspiracy.  Because many of these acts were concealed, the plaintiff is not

able to state all overt acts but alleges the following as examples:

a.  Meetings and Agreements

(1)  In response to the publication of a study definitely linking cigarette smoking and

cancer, the presidents of the leading tobacco manufacturers collectively agreed to hire and did

hire THE ROPER ORGANIZATION, a public relations firm in 1978 to deal with the "health scare"

cigarettes were presenting.  As an outgrowth of this concerted effort on behalf of the cigarette

industry, the CENTER FOR INDOOR AIR RESEARCH was formed, in March, 1988, which would

have as its stated purpose the promotion of research on cigarette dangers, but which in fact

was a public relations tool to spread disinformation on the dangers of smoking.

14

(2)  Various meetings over the years of THE TOBACCO INSTITUTE in which the conspirators
cooperated in a coordinated, industry-wide strategy designed to actively mislead, confuse, and
deceive the public about the true dangers associated with cigarettes.  At these meetings
the conspirators discussed and acted on their previously stated goals.

(3)  The creation of the Tobacco Industry trade association of which the conspirators were
members and directors for the purpose of providing "a voice to speak on behalf of the tobacco
industry on all matters"  and to provide disinformation to media and others on the dangers of
cigarette/tobacco use.

(4)  Various meetings over the years of the trade association in which the conspirators
discussed and acted on their previously stated goals.

(5)  The creation of the powerful (Executive Committee) (In existence in at least 1964) made up
of senior lawyers working on behalf of the aforementioned cigarette and tobacco products
manufacturers and reporting to those manufacturers' presidents:

As it has been described: "[t]he main power in the smoking and health situation undoubtedly
rests with the lawyers,  and more particularly, with the Executive Committee of lawyers.  This
Committee is extremely powerful; it determines the high policy of the industry on all smoking
and health matters--research and public relations matters,  for example, as well as legal
matters--and it reports directly to the Presidents."

(6)  The formation of the "Group" to assist the Executive Committee described above, another
committee of lawyers "for dealing with Federal Trade Commission matters" and a "Litigation
Committee" of lawyers for the cigarette manufacturers.

(7)  The joint efforts of the conspirators also included a meeting of the general counsel of the
major cigarette manufacturers to review proposals for scientific research, on the basis

15

that "a general feeling that an industry approach as opposed to an individual company approach

was highly desirable."

(8)  There was also a longstanding "gentleman's agreement" among the manufacturers and

other conspirators to not conduct and to suppress independent research on the issue of

smoking and health (examples are set forth below).  This agreement was referenced in a

internal draft memo, which stated, "We have reason to believe that in spite of gentlemens

agreement from the tobacco industry in previous years that at least some of the major

companies have been increasing biological studies within their own facilities."

b.  Publications

(1)  Various publications, news releases, telephone calls, contacts with the press, the media, the

government, and others by THE TOBACCO INSTITUTE, INC., and others in the conspiracy,

consisting of suggestions to the media to present the "other side" of the "health controversy"

about cigarettes, and to quote tobacco industry sources when reporting on scientific

developments showing the dangers of cigarette smoking, which suggestions were

accompanied by references to the amount of advertising carried in the magazine or newspaper

and threats that such advertising would be dropped if the magazine did not comply.

(2)  Publications and public statements by the conspirators, which contained false statements

of material fact or false representations when the conspirators knew these statements were

false or negligent representations made through these publications when the conspirator knew

or should have known these representations were false:

(A) The publication by the conspirators of "A Frank Statement to Cigarette Smokers," a full-page

promotion in more than 400 newspapapers aimed at an estimated 43 million Americans,

recognizing their "responsibility" for their consumers' health and promising to do research to

16

reveal the truth about cigarette dangers, when in fact these dangers were already well known and the conspirators had no intent to do any bona fide research.

(B)  A publication was created by the conspirators and was used by them to disseminate false information and create confusion over the causal connection between cigarette smoking and disease.  It was sent to the press, doctors, and health officials.  The "criteria for selection" of articles for publication included an example of "a report in which smoking-associated diseases are questioned."  These releases reported on fringe medical theories of the cause of lung cancer, other than cigarettes, in order to allay the public's fear regarding the deadly health consequences of smoking.  These theories, as reported by the Tobacco Institute for the conspirators include, but are not limited to, the following:  that smoking lowers fatty substances in human lungs, that lung cancer is caused by certain personality factors, and that emphysema is an outcome of childhood measles.

(C)  A publication "Tobacco and Health" (OCLC 48549026) sent to thousands of physicians in the United States claiming that cigarette smoking dangers were not real, when in fact the conspirators knew that such dangers were real.

(D)  A magazine article appearing in a magazine, paid for by conspirators but appearing to be a bona fide article by a respected author, deliberating misstating the dangers of cigarette smoking.

(E)  Numerous statements in the period, from 1968 until 2017, falsely criticizing scientific publications and reports which showed that lung cancer and other diseases were caused by cigarette smoking.

(F) A publication containing false statements about the connection between smoking and lung cancer, sent to various sources.

17

(G) Statements of other misleading publications.

c. Research Suppressed.

(1) Breaking their promises to the public to independently and honestly study and report on the health effects of smoking, the conspirators: caused cancelation of press conferences where their scientist sought to inform the public; actively and wrongfully suppressed the publishing of reports concerning the health dangers of cigarettes attacked research linking smoking to disease; and threatened, professionally, the researchers themselves.  Conspirators, while publicly refusing to acknowledge famous mouse skin painting experiments, in which it demonstrated a definitive link between cigarettes and cancer, hired a consulting firm to secretly duplicate tests.

Thereafter, a researcher requested that the results—showing the cancer causing propensity of cigarettes—be published, but conspirators would not allow it and the results of these additional tests were suppressed from the public, including the plaintiff.

(2)  The conspirators financed, supported, and encouraged the manufacture of fraudulent science through research studies which avoided the issue of cancer and addiction and instead focused on other matters, while giving the public the appearance that the "cancer question" was under "investigation".

d.  Lobbying Activities

(1)  Lobbying efforts in the period between 1968-2017 to prevent the passage of the Cigarette Labeling Act of 1965 and similar efforts between 1968-2017 which involved making false statements to Congress and the press about the dangers of cigarette smoking.

(2) Vigorous lobbying efforts by the "Executive Committee" of lawyers, described above, in an effort to carry out the purpose of the conspiracy.

18

(3)  Testimony before congressional subcommittees between 1968-2017 by coconspirators, to the effect that cigarette smoking was not addictive and not harmful, when such assertions were false and known to be false.

(4)  Other misleading statements.

(e)  Manufacture of Known Defective Product in Violation of Duty

(1)  For years, the conspirators have engaged in a vast and misleading promotional, public relations and lobbying blitz in furtherance of their conspiracy.  Much of their effort in this regard has been and continues to be directed towards minors.  They have done so and continue to do so in contravention of their duty not to make false statements of material fact, their duty not to conceal true facts from the public, and their duty not to market and sell cigarettes to minors.

(2)  The manufacture of cigarettes by the coconspirators acting in concert or individually with knowledge and ratification, was accomplished in such a way as to control and manipulate the nicotine content in the cigarettes, with the purpose of securing acceptance, habituation, and addiction in consumers, including the plaintiff.

(3)  The conspirators were not only aware of over 40 known carcinogens in cigarettes, and continued to sell and promote the sale of cigarettes without disclosing this information to the public, but also deliberately added carcinogens and other harmful ingredients to cigarettes to intentionally harm or addict consumers, including the plaintiff Ted A. McCracken.

37.  The acts of the conspiracy, and others not yet known or admitted by defendants, were unlawful acts or were done to achieve unlawful purposes, and constituted actual fraud, constructive fraud, deceit, or intentional mispreseantation.

19

38. The statements and representations made and promotional schemes and other acts described above were deceptive, false, incomplete, misleading and untrue. The defendants knew, or should have known, that the statements, representations and advertisements were deceptive, false, incomplete, misleading, and untrue at the time of making such statements, representations, and advertisements. Defendants had an economic interest in making such statements, representations and advertisements. The public including the plaintiff had no knowledge of the false, misleading, or deceptive nature of defendants' statements, representations, and advertisements when they purchased cigarettes; moreover, the public had a right to rely on such statements, representations, and advertisements. Each of the conspirators' misleading and deceptive statements, representations, and advertisements were material to the plaintiff Ted A. McCracken's purchasing defendants' cigarettes/tobacco products.

39. By virtue of their collective dominance of the cigarette industry, their political and financial influence, their force of numbers, and their actng in unison, the conspirators possessed a peculiar power of coercion which they each individually could not possess.

40. The plaintiff relied on some or all of the statements and representaions made by the conspirators and was directly and proximately damaged as detailed above.

## V.

### BREACH OF WARRANTY OF MERCHANTABILITY

41. The allegations set forth in Paragraphs 1 through 40 are incorporated by reference and realleged as if expressly set forth.

42. The defendant cigarette manufacturers sold the cigarettes with a warranty of

20

merchantability (i.e. that the product is safe for its intended use) however, the cigarettes sold were addictive and proximate cause of all the diseases enumerated in paragraphs 14, 15 and 17.

## VI.

### MISREPRESENTATION AND CONCEALMENT

43.  The allegations set forth in Paragraphs 1 through 42 are incorporated by reference and realleged as if expressly set forth.

44.  The defendant cigarette manufacturers misrepresented that the cigar/cigarettes were safe for use in 1968-2017 and concealed the fact that the cigarettes were addictive and caused emphysema, Chronic Obstructive Pulmonary Disease, asthma, cancer and all injuries enumerated in paragraphs 14, 15 and 17.

## VII.

### Damages

45.  The allegations set forth in Paragraphs 1 through 44 are incorporated by reference and realleged as if expressly set forth herein.

46.  As a direct and proximate result of the conduct of defendants or the defective nature of the products as outlined above, the plaintiff suffered from a cigarette-related disease, illness, or condition (Chronic Obstructive Pulmonary Disease; Asthma; Emphysema) which resulted in the plaintiff being adjudged disabled by the Social Security Administration, and suffered a loss of income from  employment and enjoyment of life's daily activities.  The

21

plaintiff has suffered the following damages, including, but not limited to:

a.  Earnings from the plaintiff's employment from the date of his injury to date his employment would have otherwise stopped (i.e. 20 years @ $30,000.00 per year equals $600,000.00).

ble to work.

b.  Loss of net accumulations beyond injury.

c.  Medical expenses paid by the plaintiff for the illness, disease, condition, and injury of the plaintiff.

VIII.

Apportionment of Damages

47.  Plaintiff seeks apportionment of the damages based on the parties' respective percentage of fault in causing the personal injuries alleged.

WHEREFORE, plaintiff(s) requests judgment for damages in excess of $50,000,000.00, including legal costs, court costs, interest and punitive damages as applicable.


Dated:  September 30, 2017

Ted A. McCracken

Plaintiff-pro-se

3143 N. Carlisle St.

Philadelphia, PA  19132

22