# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| TED A. MCCRACKEN | : | CIVIL ACTION |
| --- | --- | --- |
|  | : |  |
|  | : | NO. 17-4495 |
| V. | : |  |
|  | : |  |
| R.J. REYNOLDS TOBACCO | : |  |
| COMPANY, *et al.* | : |  |
|  | : |  |

KEARNEY, J.　　　　　　　　　　　　　　　　　　　　　　　　　　　May 21, 2018

## MEMORANDUM

A lifelong tobacco consumer recently diagnosed with emphysema and COPD suing tobacco manufacturers must show his state law claims are not preempted by extensive federal regulations and otherwise state a claim for negligence, products liability and a variety of fraud-based claims. After two *pro se* attempts, he cannot plead state law claims for failure to warn after 1969 as preempted by federal law. He also cannot plead a design defect other than the manufacturers altered the amount of nicotine to encourage continued addiction. He also does not state claims under common law or consumer fraud. He also fails to demonstrate our personal jurisdiction over three individual employees of the tobacco manufacturers. In the accompanying Order, we grant the individual employees' motion to dismiss. We also grant the tobacco manufacturers' motion to dismiss as to all claims other than failure to warn against ITG Brands from his first cigarette in 1966 until 1969 and for a design defect against both manufacturers challenging the amount of nicotine added to tobacco to encourage continued addiction.

## I.　Facts plead in Second Amended Complaint.

Ted A. McCracken began smoking KOOL cigarettes in 1966 at the age of 13.[1] Mr. McCracken smoked between one and two packs of cigarettes a day from 1966 through 2015.[2] Mr. McCracken only smoked KOOL cigarettes from 1966 until 1986 then began alternating

between TOP cigarette tobacco, KOOL cigarettes, and Dutch Master-President cigars until 2013.[3] In 2013, Mr. McCracken began exclusively smoking Newport cigarettes until he stopped smoking in 2015.[4]

In November 2015, a pulmonologist diagnosed Mr. McCracken with Chronic Obstructive Pulmonary Disease ("COPD"), asthma, and emphysema because of his smoking and use of tobacco products.[5] Mr. McCracken alleges the manufacturer of Newport cigarettes R.J. Reynolds Tobacco Company, the manufacturer of KOOL cigarettes ITG Brands, LLC and the manufacturer of TOP cigarette tobacco Republic Tobacco knew their cigarettes caused COPD, asthma, and emphysema.[6] Mr. McCracken alleges these three manufacturers knew or should have known their cigarette and tobacco products caused these health issues as well as addiction since 1970.[7] The manufacturers allegedly marketed their cigarettes and tobacco products "aggressively" through print, television, radio, and billboard advertisements encouraging consumers to use their products.[8] The manufacturers' advertising campaign allegedly caused Mr. McCracken to purchase and smoke their cigarettes.[9] Mr. McCracken alleges he and other consumers could not learn the probability and severity of the health risks from smoking cigarettes which the three manufacturers knew or should have known about.[10]

Mr. McCracken *pro se* sues R.J. Reynolds Tobacco Company and its president/chief executive officer Debra Crew, ITG Brands, LLC and its president/chief executive officer David Taylor, and Republic Tobacco[11] and its president/chief executive officer Donald Levin. Mr. McCracken groups his allegations into "negligence," "strict liability," "civil conspiracy" sections. Mr. McCracken then alleges causes of action under "Fraudulent Violations of the Pennsylvania Unfair and Deceptive Trade Practices and Consumer Protection Law" and "Unlawful and Unfair Targeting of Minors." Mr. McCracken then alleges eight causes of action

2

against Republic Tobacco and ITG Brands for (1) selling "unsafe and defective" tobacco products to Mr. McCracken which caused his emphysema and COPD; (2) failing to warn Mr. McCracken their tobacco products were defective due to the lack of "adequate warnings regarding the adverse health consequences" of tobacco products; (3) while knowing of the health risks posed by using their tobacco products, they negligently "tested, researched, sold, promoted, and advertised" their tobacco products and negligently failed to warn of adverse health effects "and give adequate instructions on the use of [their tobacco products]; (4) "fail[ing] to give any warning regarding the adverse consequences of smoking in the advertisements for their [tobacco] products and in fact advertised their [tobacco] products as healthful products that could be used without any fear of adverse consequences"; (5) "intentionally, willfully, and wantonly attempted to neutralize the warnings, if any, that given regarding the adverse effects of cigarette smoking"; (6) "expressly warranted that smoking [their tobacco products] that they manufactured and sold did not present any significant health consequences"; (7) possessing or should have possessed research showing their tobacco products posed health risks but did not act on the research, but instead "conspired to deprive the public, and particularly the consumers of [their] products, in general, and [Mr. McCracken] in particular, of [the research]; and, (8) unserved Defendant Republic Tobacco's product is defective because it "caused addiction and dependency, and as a result rendered any warning of the danger meaningless."[12]

In response to the motions to dismiss, Mr. McCracken describes his claims as "Negligence, Strict Liability, Defective Manufacturer's Design, Misrepresentation, Breach of Warranty, Fraud, Conspiracy-Fraud, (Negligence/Strict Liability/Defective Design/Failure to warn by Republic Tobacco Inc. (manufacturer of loose cigarette tobacco) and ITG Brand LLC

3

(manufacturer of Dutch Master Cigars), fraudulent violation of PA Unfair Deceptive Trade Practices and Consumer Law."[13]

**II.    Analysis**

We today address two motions to dismiss: one from the individual employees and one from the served cigarette manufacturers. The three individual employees of the tobacco companies, Debra Crew, David H. Taylor, and Donald Levin, move to dismiss arguing Mr. McCracken fails to establish personal jurisdiction over them because he only alleges their status with the corporations and fails to allege facts about their actual conduct.[14] They also move to dismiss arguing Mr. McCracken fails to state a claim against them because he does not allege facts about their personal conduct. The cigarette manufacturers R.J. Reynolds and ITG Brands move to dismiss arguing Mr. McCracken fails to state a claim against them.[15] While we hold *pro se* pleadings "to less stringent standards than formal pleadings drafted by lawyers," they still must, however, "allege sufficient facts in their complaints to support a claim."[16] Ms. Crew, Mr. Taylor, and Mr. Levin, R.J. Reynolds, and ITG Bands also move to dismiss arguing insufficient process for failure to use valid summons.[17]

**A.    We lack personal jurisdiction over Ms. Crews, Mr. Taylor, and Mr. Levin.**

Ms. Crews, Mr. Taylor, and Mr. Levin challenge our exercise of personal jurisdiction over them because Mr. McCracken fails to allege facts to establish sufficient contacts with Pennsylvania. To exercise personal jurisdiction over them, Mr. McCracken must first allege "sufficient 'minimum contacts' with [Pennsylvania]."[18] Mr. McCracken only alleges their status as corporate officers of the three tobacco manufacturers, residency, and they "participated in a civil conspiracy" to conceal information about the risks and addictiveness of smoking.[19] After

4

two attempts, Mr. McCracken fails to allege facts about Ms. Crews's, Mr. Taylor's, or Mr. Levin's personal contacts with Pennsylvania to establish personal jurisdiction.

We also cannot exercise personal jurisdiction over Ms. Crews, Mr. Taylor, or Mr. Levin based solely on their role as corporate agents of the tobacco manufacturers. "Generally… '[i]ndividuals performing acts in a state in their corporate capacity are not subject to personal jurisdiction of the courts of that state for those acts.'"[20] Mr. McCracken fails to allege Ms. Crews, Mr. Taylor, or Mr. Levin performed acts in Pennsylvania; he only alleges generally their employers sold and advertised tobacco products in Pennsylvania.

We dismiss Mr. McCracken's claims against Ms. Crews, Mr. Taylor, and Mr. Levin because he fails to allege they have sufficient minimum contacts with Pennsylvania for us to exercise specific personal jurisdiction. We dismiss these claims without prejudice should Mr. McCracken adduce evidence of sufficient minimum contacts to allow us to exercise specific personal jurisdiction over these three employees since none of whom are "at home" in Pennsylvania.

### B. Mr. McCracken fails to plead "failure to warn" claims against ITG Brands after 1969 and his claims against R.J. Reynolds are preempted.

Many of Mr. McCracken's allegations are the tobacco companies failed to warn him about the dangers of smoking to his health both under negligence and strict liability theories of liability.[21] The parties dispute whether federal law regulating tobacco manufacturers' advertisements pre-empts many of Mr. McCracken's state law claims under *Cipollone v. Liggett Group, Inc.*[22]

In *Cipollone*, Ms. Cipollone sued three cigarette manufacturers alleging she developed lung cancer from smoking their cigarettes.[23] Ms. Cipollone, relying on New Jersey law theories of strict liability, negligence, express warranty, and intentional tort, alleged "five categories" of

5

claims.[24] Ms. Cipollone's claims included: (1) "design defect claims" alleging the manufacturers "failed to use a safer alternative design in their products"; (2) "failure to warn claims" alleging the manufacturers failed to adequately warn of the health risks of smoking and negligently "tested, researched, sold, promoted and advertised" cigarettes; (3) "express warranty claims" alleging the manufacturers "expressly warranted that smoking cigarettes which they manufactured and sold did not present any significant health consequences"; (4) "fraudulent misrepresentation claims" alleging the manufacturers "through their advertising, attempted to neutralize the [federally mandated] warnin[g] labels" and knew but ignored research showing the health risks of smoking cigarettes to consumers; and, (5) "conspiracy to defraud claims" alleging the manufacturers conspired to keep research showing the health risks of smoking from consumers.[25]

The manufacturers argued the Federal Cigarette Labeling and Advertising Act, enacted in 1965, and the Public Health Cigarette Smoking Act of 1969 preempted Ms. Cipollone's claims.[26] The 1965 Act had a preemption section stating manufacturers were not required to make another statement in advertising or on the cigarette packages "relating to smoking and health" where the manufacturers' cigarette package or advertising conformed to the 1965 Act's requirements.[27] The 1965 Act took effect on January 1, 1966 through July 1, 1969.[28] Congress then passed the 1969 Act banning cigarette advertising on radio and television advertisements and requiring manufacturers state cigarette smoking "is dangerous" to consumers' health on the cigarette packaging.[29] The 1969 Act has a preemption section stating "[n]o requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity" with the Act.[30]

6

The Supreme Court first reviewed the preemption language of the 1965 Act and held it only preempts "state and federal rulemaking bodies from mandating particular cautionary statements [on cigarette labels] and did not pre-empt state-law damages actions."[31] The Supreme Court then reviewed the pre-emption language of the 1969 Act to determine which state common-law claims it pre-empted.[32] The Supreme Court first noted it would not address Ms. Cipollone's "design defect" claims because the district court ruled, while not pre-empted by federal law, those claims were barred on other grounds.[33] For Ms. Cipollone's "failure to warn" claims, the court found the 1969 Act pre-empted her failure to warn claims relating to the manufacturers' advertising "relating to smoking and health" but did pre-empt claims "rely[ing] solely on [manufacturers'] testing or research practice or other actions unrelated to advertising or promotion."[34] Ms. Cipollone's "breach of express warranty" claims were not pre-empted because those claims related to statements voluntarily made by the manufacturer ("the warrantor") and not "imposed under state law."[35] Her "fraudulent misrepresentation" claims were pre-empted to the extent she alleged the manufacturers' advertising "neutralized the effect of federally mandated warning labels" but not pre-empted to the extent they related to the manufacturers' general duty to not to engage in false advertising.[36] The 1969 Act did not preempt Ms. Cipollone's final claim, "conspiracy to misrepresent or conceal material facts."[37]

The Supreme Court summarized its holding "[t]he 1965 Act did not pre-empt state law damages actions; the 1969 Act pre-empts petitioner's claims based on a failure to warn and the neutralization of federally mandated warnings to the extent that those claims rely on omissions or inclusions in respondents' advertising or promotions; the 1969 Act does not pre-empt [Ms. Cipollone's] claims based on express warrant, intentional fraud and misrepresentation, or conspiracy."[38]

7

Most of Mr. McCracken's *pro se* claims are "failure to warn claims," whether under a negligence or strict liability theory of liability. Mr. McCracken's allegations are variations on the allegation the tobacco manufacturers' warnings failed to warn him about "smoking and health."[39] Mr. McCracken's claims are in essence the three manufacturers failed to give sufficient warnings "relating to smoking and health," the exact type of warning largely pre-empted by federal law.

Mr. McCracken alleges he began smoking KOOL cigarettes manufactured by ITG Brands in 1966, three years before Congress enacted the Public Health Cigarette Smoking Act of 1969.[40] Because the Supreme Court found Congress did not preempt state law damages claims until 1969, Mr. McCracken's state law claims against ITG Brands from 1966 until 1969 are not preempted.[41] Mr. McCracken's "failure to warn" claims after 1969 are pre-empted by the 1969 Act under *Cipollone* and because Mr. McCracken alleges he did not use Newport cigarettes until after 1969 he cannot state a "failure to warn" claim against R.J. Reynolds.[42]

Mr. McCracken also cannot avoid preemption by alleging manufacturers failed to warn about health risks "through nonadvertising and nonpromotional communications." A district court in Massachusetts addressed this exact allegation finding the suggestion a cigarette manufacturer "employed non-promotional communications such as seminars or public service messages to warn the public about the hazards of cigarette smoking....would have qualified as 'advertising or promotion' under the 1969 Act" and preempted the state court action.[43] We agree.

Mr. McCracken pleads a "failure to warn" claim against ITG Brands for conduct before 1969. We dismiss any "failure to warn" claim against ITG Brands after 1969 as preempted by

8

federal law. We dismiss Mr. McCracken's "failure to warn" claims against R.J. Reynolds as preempted by federal law.

### C. We dismiss Mr. McCracken's "defective design" claims except as to the "excessive nicotine" claim.

The balance of Mr. McCracken's negligence and strict liability claims are variations on his allegation of defective manufacture of tobacco products because they caused emphysema and COPD and the manufacturers failed to establish a safe dosage or design a safer tobacco product.[44] Mr. McCracken alleges the tobacco products are defective because: (1) they had "insufficient reduction in tar and other carcinogens by dilution and filtration"; (2) "lack of distinctly marked vent holes"; (3) "excessive nicotine delivery, intentionally added for detrimental consequences"; (4) "failure to utilize substitute or expanded cigarette"; (5) "failure to utilize smaller cigarettes"; (6) "failure to package fewer cigarettes per pack"; (7) "failure to contain product information data sheets" and, (8) "failure to list accurately and legibly the ingredients contained within [tobacco products] and the smoke including known carcinogens."[45]

Pennsylvania courts generally reject design defect claims based on the inherent risks of tobacco products and based on a product's specific design defect because "the risk of loss will not be placed on the supplier or manufacturer where an inherent danger is within the contemplation of the buyer, i.e., where there is no element which will remove the risks inherent in its intended use."[46] Mr. McCracken's design defect claims are their tobacco products (1) had "insufficient reduction in tar and other carcinogens by dilution and filtration"; (2) "lack[ed] of distinctly marked vent holes"; (3) "fail[ed] to utilize substitute or expanded cigarette"; (4) "fail[ed] to utilize smaller cigarettes"; and, (5) "fail[ed] to package fewer cigarettes per pack" are barred because Mr. McCracken alleges the defective design based on the inherent risks of tobacco products.[47]

9

Only one of Mr. McCracken's failure to warn claims may proceed. Mr. McCracken's allegation the manufacturers added "excessive nicotine" to the cigarettes to increase addiction may state a defective design claim. In *Bougopoulos v. Altria Group, Inc.*, the district court found the allegation cigarette manufacturers "manipulated the nicotine in their cigarettes...is a product defect separate from an allegation that cigarettes as a whole are inherently dangerous."[48] The court denied the manufacturer's motion to dismiss finding the smoker's allegations "the product defect, manipulated nicotine, caused him to remain addicted to cigarettes and become a life-long smoker, which in turn led to his COPD" stated a claim and his ability to prove strict liability "is better addressed in a motion for summary judgment."[49] We agree. Mr. McCracken makes substantially the same allegations as in *Bougopoulos*. Viewing his allegations in the light most favorable to him, he plausibly alleges defective design based on the manufacturers altering the amount of nicotine to encourage continued addiction.[50]

**D.    We dismiss Mr. McCracken's fraudulent misrepresentation, fraudulent concealment, and conspiracy fraud claims.**

Mr. McCracken alleges the manufacturers fraudulently mispresented and concealed the risk of nicotine addiction from cigarettes and "knowingly misrepresented the risk of nicotine addiction and intending [Mr. McCracken]...would become addicted to tobacco products, would be unable to quit using the products, and would then suffer from" emphysema and COPD.[51] Mr. McCracken further alleges R.J. Reynolds and its president Ms. Crew, ITG Brands and its president Mr. Taylor, and Republic Tobacco and its president Mr. Levin conspired to conceal the health risks of smoking and mislead people into believing cigarettes were safe.[52]

To state a claim for fraudulent misrepresentation, Mr. McCracken must allege each manufacturer made a misrepresentation which is false but the manufacturer intended Mr. McCracken to rely on it and Mr. McCracken justifiably relied on it suffering damage.[53] Under

10

Federal Rule of Civil Procedure 9(b), Mr. McCracken must plead his fraud claim "with particularity." Mr. McCracken does not allege a statement from the three manufacturers with respect to risk of addiction to nicotine from cigarettes which he justifiably relied on when deciding to begin smoking. Mr. McCracken fails to state a claim for fraudulent misrepresentation because he fails to identify with particularity a false statement made by the manufacturers and upon which he relied on to his detriment.

Mr. McCracken also arguably alleges the manufacturers fraudulently concealed the risks of smoking and nicotine from him. To state a claim for fraudulent concealment Mr. McCracken must allege the manufacturers "by concealment or other action intentionally prevent[ed him] from acquiring material information."[54] Pennsylvania law requires the party have a duty to speak about the material information based on the parties' special relationship before allowing liability for fraudulent concealment.[55] Our court of appeals held there is no special relationship "between the manufacturer of cigarettes and consumer of cigarettes, which gives rise to a duty to speak or disclose information."[56] Mr. McCracken cannot allege a claim for fraudulent concealment against R.J. Reynolds or ITG Brands because they had no duty to disclose information to him.

Mr. McCracken also alleges the three manufacturers and their respective presidents conspired to conceal the health risks of smoking and mislead people into believing cigarettes were safe. To state a claim for civil conspiracy, Mr. McCracken must allege the parties had an agreement and state a claim for an intentional tort.[57] Where a party "fail[s] to assert a viable claim for any of the intentional torts in his complaint, the claim for civil conspiracy must also fail."[58] In *Jeter*, after our court of appeals dismissed the cigarette consumer's civil conspiracy claim because the consumer failed to adduce evidence for either the intentional torts of

11

fraudulent concealment and intentional misrepresentation.[59] While Mr. McCracken alleges the manufacturers and presidents agreed to conceal information, he fails to state a claim for an intentional tort and we must also dismiss his claim for civil conspiracy.[60]

### E. We dismiss Mr. McCracken's Unfair Trade Practices and Consumer Protection claims.

Mr. McCracken alleges the manufacturers fraudulently violated Pennsylvania's Unfair and Deceptive Trade Practices Act. Mr. McCracken first alleges the manufacturers deceptively "[represented] that the [tobacco products] are original or new if they are deteriorated, altered, reconditioned, reclaimed, used or secondhand" by not placing a manufactured or expiration date on them and by adding ammonia and arsenic to the tobacco products.[61] Mr. McCracken alleges adding ammonia and arsenic is deceptive because the manufacturers "[represented their tobacco products] are of a particular standard, quality or grade..."[62] Mr. McCracken also alleges the manufactures violated these statutory sections by adding extra nicotine and concealing the fact nicotine is addictive from Mr. McCracken and other consumers.[63]

"To maintain a private right of action under [Pennsylvania's Unfair and Deceptive Trade Practices Act], [Mr. McCracken] must demonstrate (1) 'ascertainable loss of money or property, real or personal,' (2) 'as a result of' the [manufacturer's] prohibited conduct under the statute."[64] Mr. McCracken does not allege the manufacturers made (1) affirmative misrepresentations about the manufactured date or expiration date of their tobacco products; (2) represented their tobacco products did not contain ammonia or arsenic; or (3) made a representation about the amount of nicotine in their tobacco products or its addictiveness.

Construing the allegations in favor of Mr. McCracken, he may be using Pennsylvania's Unfair and Deceptive Trade Practices Act "catch-all provision" of "any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding" to allege the

12

manufacturers concealed these facts.[65] To state a claim under this "catch-all provision," Mr. McCracken must allege "the elements of common law fraud."[66] As we already held with respect to Mr. McCracken's fraud claim, there is no special relationship "between the manufacturer of cigarettes and consumer of cigarettes, which gives rise to a duty to speak or disclose information" for a fraud claim.[67]

We dismiss Mr. McCracken's Pennsylvania's Unfair and Deceptive Trade Practices Act because he fails to state a claim against R.J. Reynolds or ITG Brands.

### F. We dismiss Mr. McCracken's "Unlawful and Unfair Targeting of Minors" claim.

Mr. McCracken alleges the tobacco manufacturers targeted minors to encourage them to start smoking. Mr. McCracken does not cite a Pennsylvania or federal statute or a common law theory of recovery on which he bases his claim and we cannot locate a statutory or common law basis for recovery. We dismiss Mr. McCracken's "unlawful and unfair targeting of minors" claim because he fails to allege a legal basis on which we can grant relief.

## III. Conclusion

After two attempts to sue cigarette manufacturers for causing his onset of emphysema and COPD in 2015 after smoking for almost fifty years, Mr. McCracken cannot plead the facts necessary to proceed under established law for most of his claims. He may proceed into discovery on his failure to warn claim for the years 1966-1969 (when he was 13-16 years old) and on a design defect allegation the manufacturers altered the amount of nicotine to encourage continued addiction. His remaining claims are dismissed without prejudice, including all claims against the individual employees Crew, Taylor and Levin who are dismissed.

[1] Second Amended Complaint, ECF Doc. No. 33, ¶ 18.

[2] *Id.*

[3] *Id.*

[4] *Id.*

[5] *Id.* ¶ 30.

[6] *Id.* ¶¶ 3, 33. Mr. McCracken also the manufacturers knew cigarettes caused a host of other health issues but only alleges he suffers from COPD, asthma, and emphysema.

[7] *Id.* ¶ 44.

[8] *Id.* ¶ 38.

[9] *Id.* ¶ 41.

[10] *Id.* ¶ 35.

[11] Republic Tobacco is unserved. The United States Marshals Service returned the summons for the Complaint unexecuted on December 29, 2017. ECF Doc. No. 15. The Clerk of Court issued summons for the Second Amended Complaint on March 2, 2018. The summons has not expired. Interestingly, the United States Marshals served the summons and complaint upon Defendant Levin, President of Republic Tobacco, but Republic Tobacco remains unserved. *See* ECF Doc. No. 36 at 2.

[12] ECF Doc. No. 33, ¶ 113-157.

[13] ECF Doc. No. 46 at 4.

[14] "A plaintiff bears the burden of establishing with reasonable particularity that personal jurisdiction exists when the defendant has made a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure." *Aozora New Zealand LTD. v. Fru-Veg Mktg., Inc.*, No. 17-02594, 2018 WL 1545585, at *2 (E.D. Pa. Mar. 29, 2018) (citing *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001)). "[T]he plaintiff need only establish a prima facie case of personal jurisdiction and ... is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Id.* (quoting *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004)). "When defending against a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, a plaintiff must do more than rely on the pleadings alone. Once a motion has been made, 'the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence.'" *Id.* (quoting *Miller*, 384 F.3d at 102 n.6 and *Patterson v. FBI*, 893 F.3d 595, 603-04 (3d Cir. 1990)). "Instead of

relying on 'mere allegations' to assert personal jurisdiction, the plaintiff must respond to Rule 12(b)(2) motions with 'actual proofs.'" *Id.*

[15] When considering a motion to dismiss "[w]e accept as true all allegations in the plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and we construe them in a light most favorable to the non-movant." *Tatis v. Allied Insterstate, LLC*, --- F.3d ---, 2018 WL 818004, at *2 (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010)). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Our Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679).

[16] *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013)).

[17] The parties argue they received insufficient service under Fed. R. Civ. P. 4(b) because the summons failed to name the individual defendant being served. We deny their motion to dismiss because "'Rule 4 is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint' [and] technical defects 'do not justify dismissal unless a party is able to demonstrate actual prejudice' however, notice alone is not always enough." *Constitutional Guided Walking Tours, LLC v. Indep. Visitor Ctr. Corp.*, 804 F. Supp. 2d 320, 324–25 (E.D. Pa. 2011), *aff'd sub nom. Constitutional Guided Walking Tours v. Indep. Visitor Ctr. Corp.*, 454 F. App'x 118 (3d Cir. 2011) (quoting *Hechinger Liquidation Trust v. Porter–Cable Corp. (In re Hechinger Inv. Co. of Del., Inc.)*, 308 B.R. 683, 687 (Bankr. D. Del. 2003). Here Mr. McCracken sued 6 defendants *pro se* and the United States Marshals Service served 5 of defendants and filed executed summons on the docket. *See* ECF Doc. No. 7, 8, 17, 19. The five defendants have not demonstrated prejudice from the insufficient service; instead they have moved to dismiss twice. We will not dismiss Mr. McCracken's complaint against these five served Defendants based on insufficient process.

[18] *Mendicino v. Lotus Orient Corp.*, No. 10-1867, 2010 WL 4104580, at *6 (E.D. Pa. Oct. 19, 2010) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)).

[19] ECF Doc. No. 33, ¶ 60.

[20] *Mendicino*, 2010 WL 4104580, at *7 (internal citations omitted).

[21] *See, e.g.*, Mr. McCracken alleges the tobacco products were defective due to the lack of "adequate *warnings* regarding the adverse health consequences" of tobacco products, they knew of the health risks posed by using their tobacco products but negligently "tested, researched, sold, promoted, and advertised" their tobacco products.

[22] 505 U.S. 504 (1992).

[23] *Id.* at 509.

[24] *Id.*

[25] *Id.* at 509-10.

[26] *Id.* at 510, 515.

[27] *Id.* at 514.

[28] *Id.*

[29] *Id.* at 515.

[30] *Id.* (quoting § 5(b)).

[31] *Id.* at 520.

[32] *Id.* at 523-24.

[33] *Id.* at 512.

[34] *Id.* at 525-25.

[35] *Id.* at 525-26.

[36] *Id.*

[37] *Id.* at 530.

[38] *Id.* at 531.

[39] *See, e.g.*, Mr. McCracken alleges the tobacco products were defective due to the lack of "adequate *warnings* regarding the adverse health consequences" of tobacco products, they knew of the health risks posed by using their tobacco products but negligently "tested, researched, sold, promoted, and advertised" their tobacco products and *negligently failed to warn* of adverse health effect "and give adequate instructions on the use of [their tobacco products], they *"failed to give any warning* regarding the adverse consequences of smoking in the advertisements for

their [tobacco] products and in fact advertised their [tobacco] products as healthful products that could be used without any fear of adverse consequences" or they "intentionally, willfully, and wantonly attempted *to neutralize the warnings*, if any, that given regarding the adverse effects of cigarette smoking."

[40] *Id.*

[41] *Id.* at 520.

[42] *Id.* at 509.

[43] *Johnson v. Brown & Williamson Tobacco Corp.*, 122 F. Supp. 2d 194, 201 (D. Mass. 2000).

[44] *See, e.g.*, the three manufacturers: (1) failed to test or research their cigarette products for "harmful or addictive properties" and establish a safe dosage of cigarettes; (2) "designing, manufacturing, and selling a product that when used as intended was not reasonably safe for foreseeable users": (3) failing to make "feasible improvements" to decrease health risks to consumers; and, (4) adding extra "nicotine, ammonia, arsenic, and other carcinogens" to their products, without warning Mr. McCracken, to increase his addiction to and his health risks from smoking. ECF Doc. No. 33, ¶ 44.

[45] ECF Doc. No. 33, ¶ 46. Mr. McCracken also alleges design defect of a "lack of 'stop smoking' markings" but this claim is pre-empted by the 1969 Act because is it related to "smoking and health" labeling on cigarettes.

[46] *Goldstein v. Phillip Morris, Inc.*, 854 A.2d 585, 589 (Pa. Super. 2004) (quoting *Hite v. R.J. Reynolds Tobacco Co.*, 578 A.2d 417, 421 (Pa. Super. 1990)).

[47] ECF Doc. No. 33, ¶ 46. Mr. McCracken also alleges design defect of a "lack of 'stop smoking' markings", "failure to list accurately and legibly the ingredients contained within [tobacco products] and the smoke including known carcinogens", and "failure to contain product information data sheets"; but these claims are pre-empted by the 1969 Act because they related to "smoking and health" labeling on cigarettes.

[48] 954 F. Supp. 2d 54, 59 (D.N.H. 2013)

[49] *Id.* at 61-62.

[50] *See* ECF Doc. No. 33, ¶ 58. "[T]he tobacco companies deliberately enhanced and manipulated the nicotine levels to assure that addiction would result."

[51] ECF Doc. No. 33, ¶ 58.

[52] *Id.* ¶ 62.

[53] *See Bennett v. Itochu Intern., Inc.*, 682 F. Supp. 2d 469, 479 (E.D. Pa. 2010) (citing *Petruska v. Gannon Univ.*, 462 F.3d 294, 310 (3d Cir. 2006)) ("To establish a fraudulent misrepresentation claim, a plaintiff must allege (1) a misrepresentation, (2) a fraudulent utterance thereof, (3) an intention by the maker that the recipient will thereby be induced to act, (4) justifiable reliance by the recipient upon the misrepresentation and (5) damage to the recipient as a proximate cause.").

[54] *Jeter v. Brown and Williamson Tobacco Corp.*, 113 F. App'x 465, 469 (3d Cir. 2004) (quoting *Restatement (Second) of Torts* § 550).

[55] *Id.* (citing *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 611-12 (3d Cir. 1995)).

[56] *Id.* (internal citations omitted).

[57] *See Walker v. North Wales Borough*, 395 F. Supp. 2d 219, 233 (E.D. Pa. 2005) (citing *Boyanowski v. Capital Area Intermediate Unit*, 215 F.3d 396, 406 (3d Cir. 2000)) ("Thus, civil conspiracy requires an agreement and either a criminal act or intentional tort.").

[58] *Jeter*, 113 F. App'x at 469 (citing *Fife v. Great Atlantic & Pacific Tea Co.*, 52 A.2d 24, 29 (Pa. 1947)).

[59] *See id.* at 468-69.

[60] *See id.* at 469.

[61] 173 P.S. § 201-2(4)(vi); ECF Doc. No. 33, ¶ 82.

[62] § 201-2(4)(vii); ECF Doc. No. 33, ¶ 83.

[63] ECF Doc. No. 33, ¶¶ 84-86.

[64] *Kaymark v. Bank of America, N.A.*, 783 F.3d 168, 180 (3d Cir. 2015) (internal citations omitted).

[65] *Taggart v. Wells Fargo Home Mortg., Inc.*, 563 F. App'x 889, 982 (3d Cir. 2014) (quoting § 201-2(4)(xxi)).

[66] *Id.* (citing *Tran v. Metro. Life Ins. Co.*, 408 F.3d 130, 140-41 (3d Cir. 2005)).

[67] *Jeter*, 113 F. App'x at 469 (internal citations omitted).