# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| TED A. MCCRACKEN | : CIVIL ACTION |
|---|---|
| v. | : NO. 17-4495 |
| R.J. REYNOLDS TOBACCO COMPANY, *et al.* | : |

KEARNEY, J.  June 26, 2018

## MEMORANDUM

As we described in our May 21, 2018 Memorandum addressing motions to dismiss from cigarette manufacturers, "[a] lifelong tobacco consumer recently diagnosed with emphysema and COPD suing tobacco manufacturers must show his state law claims are not preempted by extensive federal regulations and otherwise state a claim for negligence, products liability and a variety of fraud-based claims." After two *pro se* attempts, he cannot plead state law claims for failure to warn after 1969 as preempted by federal law. ... He also does not state claims under common law or consumer fraud." We today address the consumer's claims against the last-served defendant who manufactured loose leaf cigarette tobacco. For reasons largely described in our May 21, 2018 Memorandum, we today grant the loose leaf tobacco manufacturer's motion to dismiss as to all claims other than failure to warn and for a design defect allegation Republic (1) altered the amount of nicotine to encourage continued addiction; (2) failed to contain product information data sheets; (3) failed to list accurately and legibly the ingredients contained within loose leaf tobacco and the smoke including known carcinogens; and, (4) lacked stop smoking markings. His remaining claims against Republic are dismissed without prejudice.

I.  **Facts plead in Second Amended Complaint.**

Ted A. McCracken began smoking cigarettes in 1966 at the age of 13.[1] Mr. McCracken smoked between one and two packs of cigarettes a day from 1966 through 2015.[2] Mr. McCracken only smoked KOOL cigarettes from 1966 until 1986 then began alternating between TOP loose-leaf cigarette tobacco, KOOL cigarettes, and Dutch Master-President cigars until 2013.[3] In 2013, Mr. McCracken began exclusively smoking Newport cigarettes until he stopped smoking in 2015.[4]

In November 2015, a pulmonologist diagnosed Mr. McCracken with Chronic Obstructive Pulmonary Disease ("COPD"), asthma, and emphysema.[5] These diseases are allegedly a direct result of Mr. McCraken's use of tobacco products.[6] Mr. McCracken alleges the manufacturer of TOP loose-leaf cigarette tobacco, Republic Tobacco, knew its cigarettes caused COPD, asthma, and emphysema.[7] Mr. McCracken alleges Republic knew or should have known its tobacco products caused these health issues as well as addiction since 1970.[8] Republic allegedly marketed their cigarettes and tobacco products "aggressively" through print, television, radio, Republic's advertising campaign allegedly caused Mr. McCracken to purchase and smoke their cigarettes.[9] Mr. McCracken alleges he and other consumers could not learn the probability and severity of the health risks from smoking cigarettes which Republic knew or should have known about.[10]

Mr. McCracken sues Republic and two other tobacco manufacturers and their respective presidents for negligence, strict liability, and civil conspiracy.[11] Mr. McCracken then alleges causes of action under "Fraudulent Violations of the Pennsylvania Unfair and Deceptive Trade Practices and Consumer Protection Law" and "Unlawful and Unfair Targeting of Minors." Mr. McCracken alleges eight causes of action against Republic for (1) selling "unsafe and defective"

tobacco products to Mr. McCracken which caused his emphysema and COPD; (2) failing to warn Mr. McCracken their tobacco products were defective due to the lack of "adequate warnings regarding the adverse health consequences" of tobacco products; (3) while knowing of the health risks posed by using their tobacco products, they negligently "tested, researched, sold, promoted, and advertised" their tobacco products and negligently failed to warn of adverse health effects" and give adequate instructions on the use of [their tobacco products]; (4) "fail[ing] to give any warning regarding the adverse consequences of smoking in the advertisements for their [tobacco] products and in fact advertised their [tobacco] products as healthful products that could be used without any fear of adverse consequences"; (5) "intentionally, willfully, and wantonly attempted to neutralize the warnings, if any, that given regarding the adverse effects of cigarette smoking"; (6) "expressly warranted that smoking [their tobacco products] that they manufactured and sold did not present any significant health consequences"; (7) possessing or should have possessed research showing their tobacco products posed health risks but did not act on the research, but instead "conspired to deprive the public, and particularly the consumers of [their] products, in general, and [Mr. McCracken] in particular, of [the research]; and, (8) Republic's tobacco product is defective because it "caused addiction and dependency, and as a result rendered any warning of the danger meaningless."[12]

## II. Analysis

Republic moves Mr. McCracken's claims against to dismiss for failure to state a claim except the design defect claim Republic added "excessive nicotine" to its tobacco products to increase addiction.[13] We hold *pro se* pleadings to a less stringent standard, but Mr. McCracken must still allege sufficient facts in his complaint to support a claim.[14]

3

### A. Mr. McCracken fails to plead a "failure to warn" claim against Republic.

Mr. McCracken alleges he began using Republic's TOP loose-leaf tobacco product in either 1978 or 1986.[15] Mr. McCracken uses theories of strict liability and negligence to allege Republic failed to warn him its product caused addiction and serious health risks. Republic moves to dismiss Mr. McCracken's failure to warn claims because it did not have a duty to warn Mr. McCracken of the dangers of using its loose-leaf tobacco products under either federal law or Pennsylvania state law.

Republic argues it has no duty to warn under the Public Health Cigarette Smoking Act of 1969 because the 1969 Act does not apply to loose-leaf tobacco products; it only applies to packaged pre-rolled cigarettes. In *McKay v. Republic Tobacco Co.*, a smoker alleged Republic violated the 1969 Act because it failed to warn him of the risks of using its product.[16] The district court examined the 1969 Act's definition of "cigarette" and joined other district courts around the country in holding the 1969 Act did not create a duty to warn on loose-leaf tobacco products.[17]

Because Congress did not create a duty to warn, there is no federal law pre-empting Mr. McCracken's "failure to warn" state law claims against Republic as a loose-leaf tobacco manufacturer. Absent preemption, we examine whether Mr. McCracken states a claim for failure to warn against Republic. To state a claim for failure to warn under Pennsylvania law, Mr. McCracken must allege "(1) a warning a particular product was either lacking or inadequate; and (2) the user of the product would have avoided the risk he been advised of it by the seller."[18] "When the dangers of a product are or should be known to the user, liability cannot be imposed on the manufacturers for failure to warn of the danger."[19]

4

While Republic relies on a case dismissing failure to warn claims at the Rule 12 stage because the danger of smoking "is apparent or open and obvious," we decline to preliminarily dismiss Mr. McCracken's failure to warn claim given the fact based nature of the claim, his *pro se* status, and the decades long nature of his allegations.[20] In *Jeter*, our court of appeals noted to survive summary judgment on a failure to warn claim the smoker must adduce evidence "to support a reasonable inference, rather than a guess, that the existence of an adequate warning might have prevented the injury."[21] The court affirmed the grant of summary judgment based on the smoker's testimony showing he knew the risks of smoking but "ignored the warnings."[22]

At this stage, we must accept Mr. McCracken's allegation he was not aware of the risks of using Republic's loose-leaf cigarette tobacco product as true and allow him to proceed on his failure to warn claim against it. We deny Republic's motion to dismiss Mr. McCracken's failure to warn claims.

### B.     Mr. McCracken states a "defective design" claim.

Mr. McCracken alleges Republic's loose-leaf cigarette tobacco product is defective because: (1) "excessive nicotine delivery, intentionally added for detrimental consequences"; (2) "failure to contain product information data sheets"; (3) "failure to list accurately and legibly the ingredients contained within [tobacco products] and the smoke including known carcinogens"; and, (4) a "lack of stop smoking markings."[23]

Pennsylvania courts generally reject these types of design defect claims because "the inherent danger is within the contemplation of the buyer."[24] There is no way to remove the risks of intended use.[25] Republic moves to dismiss Mr. McCracken's design defect claims except his allegation it added "excessive nicotine" to increase addiction because they are identical to the claims we dismissed against other tobacco manufacturers in our previous order. While     Mr.

5

McCracken makes identical design defect allegations against Republic and two cigarette manufacturers, we dismissed the following design defects as pre-empted by federal law, not because they are inherent risks of the product: (1) "failure to contain product information data sheets"; (2) "failure to list accurately and legibly the ingredients contained within [tobacco products] and the smoke including known carcinogens"; and, (3) a "lack of stop smoking markings."[26] At this stage, because federal law does not pre-empt these claims against loose leaf cigarette tobacco products like Republic and because these allegations do not relate to the inherent risk of using tobacco products, we deny Republic's motion to dismiss Mr. McCracken's design defect claims based on the identified three theories.

### C. We dismiss Mr. McCracken's fraudulent misrepresentation, fraudulent concealment, and conspiracy fraud claims.

Mr. McCracken alleges Republic along with other tobacco manufacturers fraudulently mispresented and concealed the risk of nicotine addiction from cigarettes and "knowingly misrepresented the risk of nicotine addiction and intending [Mr. McCracken]…would become addicted to tobacco products, would be unable to quit using the products, and would then suffer from" emphysema and COPD.[27] Mr. McCracken further alleges Republic and its president Mr. Levin conspired to conceal the health risks of smoking and mislead people into believing its tobacco products were safe.[28]

To state a claim for fraudulent misrepresentation, Mr. McCracken must allege Republic made a misrepresentation which is false but the manufacturer intended Mr. McCracken to rely on it and Mr. McCracken justifiably relied on it suffering damage.[29] Under Federal Rule of Civil Procedure 9(b), Mr. McCracken must plead his fraud claim "with particularity." Mr. McCracken does not allege a statement from Republic with respect to risk of addiction to nicotine from cigarettes which he justifiably relied on when deciding to begin smoking. Mr. McCracken fails

6

to state a claim for fraudulent misrepresentation because he fails to identify with particularity a false statement made by the manufacturers and upon which he relied on to his detriment.

Mr. McCracken also arguably alleges Republic fraudulently concealed the risks of smoking and nicotine from him. To state a claim for fraudulent concealment Mr. McCracken must allege the manufacturers "by concealment or other action intentionally prevent[ed him] from acquiring material information."[30] Pennsylvania law requires the party have a duty to speak about the material information based on the parties' special relationship before allowing liability for fraudulent concealment.[31] Our court of appeals held there is no special relationship "between the manufacturer of cigarettes and consumer of cigarettes, which gives rise to a duty to speak or disclose information."[32] Mr. McCracken cannot allege a claim for fraudulent concealment against Republic because it had no duty to disclose information to him.

Mr. McCracken also alleges Republic and its president conspired with two other manufacturers and their respective presidents to conceal the health risks of smoking and mislead people into believing cigarettes were safe. To state a claim for civil conspiracy, Mr. McCracken must allege the parties had an agreement and state a claim for an intentional tort.[33] Where a party "fail[s] to assert a viable claim for any of the intentional torts in his complaint, the claim for civil conspiracy must also fail."[34] In *Jeter*, after our court of appeals dismissed the cigarette consumer's civil conspiracy claim because the consumer failed to adduce evidence for either the intentional torts of fraudulent concealment and intentional misrepresentation.[35] While Mr. McCracken alleges Republic agreed with other manufacturers to conceal information, he fails to state a claim for an intentional tort and we must also dismiss his claim for civil conspiracy.[36]

.

**D.  We dismiss Mr. McCracken's unfair trade practices and consumer protection claims.**

Mr. McCracken alleges Republic fraudulently violated Pennsylvania's Unfair and Deceptive Trade Practices Act. Mr. McCracken first alleges Republic deceptively "[represented] that the [tobacco products] are original or new if they are deteriorated, altered, reconditioned, reclaimed, used or secondhand" by not placing a manufactured or expiration date on them and by adding ammonia and arsenic to the tobacco products.[37] Mr. McCracken alleges adding ammonia and arsenic is deceptive because Republic "[represented their tobacco products] are of a particular standard, quality or grade…"[38] Mr. McCracken also alleges Republic violated these statutory sections by adding extra nicotine and concealing the fact nicotine is addictive from Mr. McCracken and other consumers.[39]

"To maintain a private right of action under [Pennsylvania's Unfair and Deceptive Trade Practices Act], [Mr. McCracken] must demonstrate (1) 'ascertainable loss of money or property, real or personal,' (2) 'as a result of' the [manufacturer's] prohibited conduct under the statute."[40] Mr. McCracken does not allege Republic made (1) affirmative misrepresentations about the manufactured date or expiration date of its tobacco products; (2) represented its tobacco products did not contain ammonia or arsenic; or (3) made a representation about the amount of nicotine in its tobacco products or its addictiveness.

Construing the allegations in favor of Mr. McCracken, he may be referring to Pennsylvania's Unfair and Deceptive Trade Practices Act "catch-all provision" of "any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding" to allege the manufacturers concealed these facts.[41] To state a claim under this "catch-all provision," Mr. McCracken must allege "the elements of common law fraud."[42] As we already held with respect to Mr. McCracken's fraud claim, there is no special relationship "between the

8

manufacturer of cigarettes and consumer of cigarettes, which gives rise to a duty to speak or disclose information" for a fraud claim.[43]

We dismiss Mr. McCracken's Pennsylvania's Unfair and Deceptive Trade Practices Act because he fails to state a claim against Republic.

### E. We dismiss Mr. McCracken's "unlawful and unfair targeting of minors" claim.

Mr. McCracken alleges Republic targeted minors to encourage them to start smoking. Mr. McCracken does not cite a Pennsylvania or federal statute or a common law theory of recovery on which he bases his claim and we cannot locate a statutory or common law basis for recovery. We dismiss Mr. McCracken's "unlawful and unfair targeting of minors" claim because he fails to allege a legal basis on which we can grant relief.

## III. Conclusion

We grant in part and deny in part Republic's motion to dismiss. Mr. McCracken may proceed into discovery on his failure to warn claims and design defect allegation Republic (1) altered the amount of nicotine to encourage continued addiction; (2) failed to contain product information data sheets; (3) failed to list accurately and legibly the ingredients contained within loose leaf tobacco and the smoke including known carcinogens; and, (4) a lack of stop smoking markings. His remaining claims against Republic are dismissed without prejudice.

---

[1] ECF Doc. No. 33, ¶ 18.

[2] *Id.*

[3] *Id.*

[4] *Id.*

9

⁵ *Id.* ¶ 30.

⁶ *Id.*

⁷ *Id.* ¶¶ 3, 33.

⁸ *Id.* ¶ 44.

⁹ *Id.* ¶¶ 38, 41.

¹⁰ *Id.* ¶ 35.

¹¹ The two other tobacco manufacturers, R.J. Reynolds and ITG Brands, and the three individual defendants earlier moved to dismiss. On May 21, 2018, we granted in part and denied in part their motions for largely the same reasons. ECF Doc. Nos. 52, 53.

¹² ECF Doc. No. 33, ¶¶ 113-157.

¹³ ECF Doc. No. 61 at 2. When considering a motion to dismiss "[w]e accept as true all allegations in the plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and we construe them in a light most favorable to the non-movant." *Tatis v. Allied Insterstate, LLC*, --- F.3d ---, 2018 WL 818004, at *2 (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010)). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Our Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679).

¹⁴ *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Mala v. Crown Bay Marina Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

¹⁵ *Cf.* ECF Doc. No. 33, ¶ 18 and ¶ 118. In Paragraph 18, Mr. McCracken alleges he smoked KOOL cigarettes exclusively from 1966 until 1986 then began using TOP tobacco products then in Paragraph 118, he alleges he used TOP tobacco products from 1978 until 2015.

¹⁶ No. 00-2366, 2001 WL 122223, at *1 (E.D. Pa. Feb. 13, 2001).

[17] *Id.* at *2 (citing *Gonzalez v. Republic Tobacco Co.*, No. 98-7228, 2000 WL 343236, at *2 (N.D. Ill. March 31, 2000); *Anthony v. Top Tobacco Co.*, No. 98-1502, 1999 WL 459727, at *2 (M.D. Fla. June 14, 1999); *Toole v. Brown & Williamson Tobacco Corp.*, 980 F. Supp. 419, 421 (N.D. Ala. 1997); *Wilson v. Brown & Williamson Tobacco Corp.*, 968 F. Supp. 296, 300 (S.D. W.Va. 1997)).

[18] *Jeter v. Brown and Williamson Tobacco Corp.*, 113 F.App'x. 465, 467-68 (3d Cir. 2004) (citing *Phillips v. A-Best Prods. Co.*, 665 A.2d 1167, 1171 (Pa. 1995)).

[19] *Id.* at 468 (citing *Sherk v. Daisy-Heddon*, 450 A.2d 615, 618 (Pa. 1995)).

[20] *See, e.g., McKay*, 2001 WL 12223, at *2.

[21] *Jeter*, 113 F.App'x. at 468 (quoting *Pavlik v. Lane Ltd./Tobacco Exp. Int'l*, 135 F.3d 876, 881 (3d Cir. 1998)).

[22] *Id.*

[23] ECF Doc. No. 33, ¶ 46. Mr. McCracken also alleges design defects: (1) "failure to utilize substitute or expanded cigarette"; (2) "failure to utilize smaller cigarettes"; (3) "failure to package fewer cigarettes per pack"; (4) "lack of distinctly marked vent holes"; and (5) "insufficient reduction in tar and other carcinogens by dilution and filtration" Because Mr. McCracken alleges Republic makes loose-leaf cigarette tobacco products, these allegations would not apply because the TOP cigarette tobacco does not come pre-packaged in cigarette form.

[24] *Goldstein v. Phillip Morris Inc.*, 854 A.2d 585, 589 (Pa. Super. 2004) (Quoting *Hite v. R.J. Reynolds Tobacco Co.*, 578 A.2d 417, 421 (Pa. Super. 1990)).

[25] *Id.*

[26] ECF Doc. No. 52 at 9, n.47

[27] ECF Doc. No. 33, ¶ 58.

[28] *Id.* ¶ 62.

[29] *See Bennett v. Itochu Intern., Inc.*, 682 F. Supp. 2d 469, 479 (E.D. Pa. 2010) (citing *Petruska v. Gannon Univ.*, 462 F.3d 294, 310 (3d Cir. 2006)) ("To establish a fraudulent misrepresentation claim, a plaintiff must allege (1) a misrepresentation, (2) a fraudulent utterance thereof, (3) an intention by the maker that the recipient will thereby be induced to act, (4) justifiable reliance by the recipient upon the misrepresentation and (5) damage to the recipient as a proximate cause.").

[30] *Jeter*, 113 F. App'x at 469 (quoting *Restatement (Second) of Torts* § 550).

[31] *Id.* (citing *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 611-12 (3d Cir. 1995)).

[32] *Id.* (internal citations omitted).

[33] *See Walker v. North Wales Borough*, 395 F. Supp. 2d 219, 233 (E.D. Pa. 2005) (citing *Boyanowski v. Capital Area Intermediate Unit*, 215 F.3d 396, 406 (3d Cir. 2000)) ("Thus, civil conspiracy requires an agreement and either a criminal act or intentional tort.").

[34] *Jeter*, 113 F. App'x at 469 (citing *Fife v. Great Atlantic & Pacific Tea Co.*, 52 A.2d 24, 29 (Pa. 1947)).

[35] *See id.* at 468-69.

[36] *See id.* at 469.

[37] 173 P.S. § 201-2(4)(vi); ECF Doc. No. 33, ¶ 82.

[38] § 201-2(4)(vii); ECF Doc. No. 33, ¶ 83.

[39] ECF Doc. No. 33, ¶¶ 84-86.

[40] *Kaymark v. Bank of America, N.A.*, 783 F.3d 168, 180 (3d Cir. 2015) (internal citations omitted).

[41] *Taggart v. Wells Fargo Home Mortg., Inc.*, 563 F. App'x 889, 982 (3d Cir. 2014) (quoting § 201-2(4)(xxi)).

[42] *Id.* (citing *Tran v. Metro. Life Ins. Co.*, 408 F.3d 130, 140-41 (3d Cir. 2005)).

[43] *Jeter*, 113 F. App'x at 469 (internal citations omitted).