## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| TED A. MCCRACKEN, *et al.* | : CIVIL ACTION |
| | : |
| v. | : No. 17-4495 |
| | : |
| R.J. REYNOLDS TOBACCO | : |
| COMPANY, *et al.* | : |

## MEMORANDUM

**KEARNEY, J.**                                                          **February 14, 2019**

Smoking cigarettes since 1966, a worker exposed to asbestos now seeks damages from cigarette manufacturers for causing him to become addicted to nicotine which he claims led to emphysema in the past few years. He *pro se* alleges the manufacturers defectively designed tobacco products to encourage addiction and one of the manufacturers failed to warn of the risks from 1966-1969. Believing the manufacturers designed tobacco to make him an addict is different than proving it after discovery. Following discovery, we review evidence and do not try cases based on public perception. The worker seeks judgment in his favor on a design defect in his favored tobacco products arguing the manufacturers are barred from presenting a defense based on Judge Kessler's 2006 thousands of fact findings demonstrating cigarette manufacturers' liability for racketeering in their marketing. But absent showing one of Judge Kessler's findings on the manufacturer's marketing conduct confirms the manufacturers designed cigarettes to make him an addict, we cannot bar the manufacturer's causation defense. The manufacturers present unrebutted evidence defeating a possible finding of causation. We must enter judgment when there is no competent evidence on causation other than relying on findings in other cases or in inapplicable public sources. The worker also fails to show infliction of emotional distress. We enter summary judgment for the manufacturers in the accompanying Order.

## I.    Undisputed facts[1]

Ted A. McCracken smoked about a pack of cigarettes from 1966 until 2015 and has since reduced his smoking to half a pack a day.[2]  He preferred cigarettes manufactured by R.J. Reynolds Tobacco Company (RJR),  ITG Brands, LLC, and Republic Tobacco, L.P.  but mostly smoked Kool cigarettes.  He also smoked non-menthol cigarette tobacco, Top roll-your-own cigarettes, Newport cigarettes, and Dutch Master cigars.[3]

Doctors diagnosed Mr. McCracken with emphysema and chronic obstructive pulmonary disease (COPD) a few years ago.[4]  Mr. McCracken claims his emphysema causes him shortness of breath, headaches, and inability to walk moderate distances.[5]  Mr. McCracken takes inhalers and drugs to help him quit smoking.[6]  Dr. James H. Dovnarsky, M.D. prescribed Mr. McCracken nasal inhalants and ibuprofen.[7]  He discussed with Mr. McCracken the risks of continued smoking, including increased risk of emphysema and lung cancer.[8]  Dr. Dovnarsky noted Mr. McCracken had "heavy, direct exposure to asbestos on a regular basis in the 1970's" when he worked with cement.[9]  He also noted "Chronic bronchitis related to chronic tobacco use."[10]  Dr. James Brown, M.D. assessed Mr. McCracken with "Emphysema: secondary to smoking and also has potential occupational exposures"[11] and diagnosed him with "Tobacco use disorder."[12]  Dr. Brown noted Mr. McCracken had at least three years of exposure to asbestos.[13]

Mr. McCracken admits seeing the Surgeon General's warnings: "Warning: Cigarette smoking may be dangerous to your health" on cigarette packs beginning in 1966.[14]  He knew cigarette packs contained warnings cigarettes caused heart disease, lung cancer, and emphysema.[15]  Mr. McCracken thought "six or seven" different warnings appeared on cigarette packs,[16] but he "didn't pay much attention to it."[17]  Mr. McCracken's father, mother, and brother told him to stop smoking because of its negative health effects when Mr. McCracken was in junior high school.[18]

2

Later, his wife Goretti McCracken[19] and his doctors[20] told him to quit smoking. Despite this advice, he kept smoking and now argues ammoniated ingredients in the cigarettes turned him into a nicotine addict. Mr. McCracken attaches various documents, including newspaper articles, statements of public officials, and a report in the Federal Register to argue the manufacturers designed their tobacco products to make sure he became addicted to their products.[21]

The manufacturers dispute their products caused Mr. McCracken's injury. RJR denied manipulating the nicotine levels of its cigarettes.[22] It used ammoniated reconstituted tobacco as a blend component in Kool King cigarettes from 1993 through 2001.[23] The manufacturers also adduced expert testimony after examining Mr. McCracken. Dr. Bhushan S. Agharkar, M.D. opined Mr. McCracken did not have a "tobacco use disorder" and "was not addicted to nicotine"[24] after reviewing his medical records and testimony. Dr. Agharkar reasoned Mr. McCracken did not have trouble reducing his smoking in 2015, did not exhibit withdrawal symptoms, and did not evidence such a strong craving for nicotine it affected his ability to carry out routine responsibilities.[25] The manufacturers also presented the expert testimony of Dr. Charles D. Garner, PhD, RJR's vice president of next generation products/submission & engagement in scientific and regulatory affairs. He opined RJR "does not use ammonia to increase the addictiveness of its cigarettes."[26]

Mr. McCracken kept smoking despite the warnings on tobacco products.[27] Republic admits it did not include warnings smoking could cause emphysema or Top products contained tar, nicotine, or carcinogens.[28] The manufacturers presented the expert testimony of Gregg L. Michel, PhD, who testified to the "widespread availability of information about the health risks of smoking."[29] He opined Mr. McCracken would have known smoking presented health risks after 1964.[30]

3

Mr. McCracken then *pro se* sued the manufacturers. After dismissing his first complaint and examining Mr. McCracken's Second Amended Complaint, we allowed Mr. McCracken to proceed on his two remaining theories under Pennsylvania Law: (1) a design defect claim alleging the manufacturers manipulated the amount of nicotine in their cigarettes to encourage continued addiction asserting both strict liability and negligence theories, and (2) a failure to warn claim against Republic alleging its cigarette packages failed to display product information data, ingredients contained within the products, and warnings about smoking.[31] We permitted Mr. McCracken to file a Third Amended Complaint, in which he included a new claim for intentional infliction of emotional distress and Ms. McCracken brought a claim for loss of consortium.[32] Mr. McCracken testified he has not seen Ms. McCracken, who lives in Cameroon, Africa, since 2011.[33] She has never come to the United States.[34] Mr. McCracken sends her "a couple hundred" dollars every month.[35]

## II.    Analysis

All parties now move for summary judgment.[36] We granted the parties leave to supplement their motions based on later discovery.[37] Mr. McCracken attempted to meet his burden (or create issues of fact) by attaching documents, including newspaper articles, articles from health websites, a report in the Federal Register, and public statements from government agencies.[38]

### A. We grant the manufacturers' summary judgment motion on the design defect claim due to a lack of causation evidence.

Mr. McCracken argues he is entitled to summary judgment on his design defect claim because the manufacturers are collaterally estopped from contesting his claims under Judge Kessler's detailed factual findings in *United States v. Philip Morris*, a case brought by the Department of Justice challenging cigarette manufacturers for their marketing strategies as a racketeering conspiracy.[39] The manufacturers argue offensive collateral estoppel does not apply

4

and they are entitled to summary judgment because Mr. McCracken has failed to adduce causation evidence. We agree with the manufacturers.

### 1. Collateral estoppel does not bar the manufacturers' causation arguments.

The doctrine of collateral estoppel, also called "issue preclusion," "ensures that once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation."[40] "The prerequisites for the application of issue preclusion are satisfied when: (1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment."[41]

Mr. McCracken was not a party in *United States v. Philip Morris* case. When, as here, a non-party to an earlier litigation asserts issue preclusion against a defendant from the earlier litigation, the party hopes to succeed under a theory known as "non-mutual offensive collateral estoppel, [which] presents a unique potential for unfairness."[42] "For non-mutual offensive issue preclusion, [the four] traditional elements are necessary but not sufficient."[43] Nonmutual offensive collateral estoppel may present unfairness if "the judgment relied upon as a basis for the estoppel is itself inconsistent with one or more previous judgments in favor of the defendant," or if "the second action affords the defendant procedural opportunities unavailable in the first action that could readily cause a different result."[44] It also risks incentivizing plaintiffs "to adopt a 'wait and see' attitude, in the hope that the first action by another plaintiff will result in a favorable judgment."[45]

Mr. McCracken asserts collateral estoppel bars the manufacturers from a defense based on Judge Kessler's decision in *United States v. Philip Morris USA Inc.*, also referred to as the "DOJ

Case."[46] The United States sued nine cigarette manufacturers under the Racketeer Influenced and Corrupt Organizations Act, alleging they engaged in a conspiracy to deceive the public about the dangers of nicotine through many methods including denying "nicotine is a highly addictive drug which they manipulated in order to sustain addiction."[47] The defendants in the DOJ Case included RJR and Brown & Williamson, who manufactured Kool cigarettes until 2003. The litigation spanned seven years, in which the parties exchanged millions of documents, and a nine-month bench trial, in which eighty-four witnesses testified.[48] Judge Kessler issued an exhaustive 1,682-page opinion including 4,088 findings of fact detailing the "extraordinarily complex case."[49] Judge Kessler found all nine manufacturers liable under RICO, enjoined them from using deceptive advertising, and ordered them to issue corrective advertising regarding their deception.[50] Judge Kessler held:

> The individual components must be viewed not independently but in context of the entire scheme to defraud. It is sufficient to prove by the totality of the circumstances that the defendant devised a scheme intended to defraud which included one or more of the individual component schemes alleged . . .
>
> The totality of the evidence proves Defendants' wide reaching and pervasive scheme to defraud consumers and potential consumers of cigarettes. As established at trial and explained below, Defendants coordinated their public relations, research, cigarette design and marketing efforts in order to advance their overarching scheme to defraud by: (1) denying the adverse health effects of active smoking; (2) denying the addictiveness of nicotine and cigarette smoking; (3) denying their manipulation of the nicotine content of cigarettes; (4) misrepresenting the health risks attached to light and low tar cigarettes; (5) denying their marketing to youth; (6) denying the adverse health effects of secondhand smoke; and (7) suppressing, concealing, and destroying information and documents related to the adverse health effects of smoking.[51]

Judge Kessler found the manufacturers precisely controlled how the cigarettes delivered nicotine to their smokers to sustain the smokers' addiction to nicotine and ensure commercial success.[52] As to Brown & Williamson, Judge Kessler found it "has long known that nicotine is the most important component of cigarettes, that nicotine is the most important component of

6

addiction, and that without nicotine, people would not smoke."[53] Judge Kessler found RJR began studying the optimal levels of nicotine in 1971, maintained a "nicotine optimization" program to ensure smokers received the most nicotine they could, and studied other manufacturers' brands to stay competitive.[54]

Mr. McCracken argues Judge Kessler's opinion in the DOJ Case proves his design defect claim against RJR, which acquired Brown &Williamson in 2003, and ITG, which acquired the Kool brand in 2015. Mr. McCracken does not specify which of Judge Kessler's enumerated findings preclude the present defenses to his claims. Instead, he argues "the issue against the tobacco manufacturers (i.e. RJR and ITG BRANDS LLC) is whether they manipulated the nicotine levels in their KOOL cigarettes to insure addiction, and hence causes the accelerated onset of emphysema, COPD."[55] He asks us to apply issue preclusion to Judge Kessler's general finding the manufacturers were "found guilty . . . for manipulating the nicotine levels with use of porous cigarette papers, selective use of high nicotine yield tobacco, and the selection of filters."[56]

We initially acknowledge "[t]here is a strong argument for offensive collateral estoppel in this case"[57] because RJR vigorously defended itself against similar allegations in the DOJ Case. Still, "every court that has been asked to apply offensive nonmutual issue preclusion to the findings in the *DOJ* case has refused to do so."[58]  After careful consideration, we find these courts' thoughtful reasoning is persuasive and deny Mr. McCracken's assertion of collateral estoppel to preclude the manufacturers' defenses.

Mr. McCracken has met three of the four necessary (but not sufficient) elements to assert collateral estoppel. These elements "require little discussion."[59]  First, Mr. McCracken asserts the same issue here as the United States did in the DOJ Case—namely, whether the manufacturers manipulated the levels of nicotine in their cigarettes to ensure addiction, including B&W

7

manipulating the levels of nicotine in Kool cigarettes. Second, the manufacturers "actually litigated" the issue of nicotine manipulation in the DOJ Case by spending seven years on the case, including a nine-month trial with eighty-four witnesses. Third, Judge Kessler issued a valid final judgment in the DOJ Case.[60]

But Mr. McCracken fails to show which findings Judge Kessler made essential to her judgment. Several courts have denied offensive collateral estoppel based on the DOJ Case by reasoning plaintiffs failed to show how Judge Kessler made any one of her findings essential to her ruling.[61] Judge Kessler found the manufacturers engaged in seven distinct practices as part of their RICO enterprise, only one of which involved nicotine manipulation. She found "[i]t is sufficient to prove by the totality of the circumstances that the defendant devised a scheme intended to defraud which included *one or more of the individual component schemes alleged.*"[62] Our Court of Appeals instructs "independently sufficient alternative findings should be given preclusive effect."[63] But "[t]he moving party clearly bears the burden of establishing the necessary elements of issue preclusion" and "[n]either the district court nor the defendant is required to engage in a 'hunt and peck' exercise to ferret out potentially relevant and necessary findings."[64]

Mr. McCracken's collateral estoppel argument fails. He does not argue which findings Judge Kessler made essential to her judgment. Mr. McCracken attaches hundreds of pages of Judge Kessler's opinion, but he does not explain how any of Judge Kessler's thousands "of findings were outcome determinative in the previous action."[65] Mr. McCracken invites us to engage in a "hunt and peck exercise to ferret out"[66] which of Judge Kessler's thousands of independent findings she made essential to her judgment and which she did not. We do not take lightly our duty to liberally construe Mr. McCracken's *pro se* motion to make out the "strongest arguments suggested therein,"[67] but we will not create arguments for him. We cannot allow Mr.

8

McCracken to use thousands of findings of fact from another court as proofs in this case—he needs to specifically argue which findings prove his design defect theory in this lawsuit and thus preclude the manufacturers' defenses.

Even had Mr. McCracken identified necessary findings from Judge Kessler's 2006 opinion, the additional factors we must consider particular to offensive nonmutual collateral estoppel also bar Mr. McCracken's assertion of issue preclusion to prove design defect. First, we are wary preclusion incentivizes plaintiffs to take the "wait-and-see" approach the Supreme Court has cautioned against. Allowing issue preclusion here, where Mr. McCracken relies heavily upon issue preclusion for summary judgment on the design defect claim, risks establishing a fund for any plaintiff who smoked and has lung-related injury. Second, tobacco manufacturers, including RJR, obtained favorable judgments in cases with similar allegations.[68] The manufacturers have prevailed in "so many of the tobacco cases that . . . according conclusive effect to the last of the series of litigations is inappropriate."[69] Third, this case is procedurally distinct from the DOJ Case. Here, one plaintiff sues for damages and has demanded a jury trial;[70] in the DOJ Case, the United States sued for injunctive relief in a bench trial. Because tobacco manufacturers obtained jury verdicts on similar issues, we should not automatically preclude the manufacturers from pursuing a different strategy here than they did in the DOJ Case. We deny Mr. McCracken's assertion of offensive nonmutual collateral estoppel to preclude the manufacturers' defenses.

## 2. Mr. McCracken fails to adduce evidence creating a genuine issue of material fact as to causation.

Mr. McCracken asserts design defect claims under both strict liability and negligence theories. "To prevail on a strict liability claim, a plaintiff must prove 'the product was defective, the defect existed when it left the defendant's hands, and the defect caused the harm.' "[71] Mr. McCracken has failed to adduce sufficient evidence creating a genuine issue of material fact as to

whether a defect caused his addiction. The manufacturers are entitled to summary judgment on the strict liability and negligence claims.

Pennsylvania courts use two tests to evaluate whether a product is defective. "Under the consumer expectation standard, 'the product is in a defective condition if the danger is unknowable and unacceptable to the average or ordinary consumer.' "[72] "Under the risk-utility standard, the 'product is in a defective condition if a "reasonable person" would conclude that the probability and seriousness of the harm caused by the product outweigh the burden or costs of taking precautions.'"[73] The question of "[w]hether a product is in a defective condition is a question of fact ordinarily submitted for determination to the finder of fact; the question is removed from the jury's consideration only where it is clear that reasonable minds could not differ on the issue."[74]

The manufacturers are entitled to summary judgment because the record lacks admissible evidence showing the use of ammoniated tobacco caused Mr. McCracken's addiction, emphysema, or COPD. Our Court of Appeals instructs "[a]lthough expert evidence is generally required in a products liability case where a defect is alleged, we have never foreclosed the possibility that a defective condition may be established through non-expert evidence."[75] But "under Pennsylvania law, in a case regarding the cause of pain or physical injury, a plaintiff must produce medical testimony."[76] "A plaintiff's expert testimony must establish with a reasonable degree of medical certainty, that the plaintiff's injuries stem from the negligent act alleged."[77] Mr. McCracken "cannot prove causation by merely showing that smoking cigarettes causes cancer and other diseases."[78] He must prove he is actually "addicted to cigarettes, and, if so, whether defendants (and which defendant) caused that addiction."[79]

Other than asking us to bar defenses under an inapplicable offensive nonmutual collateral estoppel doctrine, Mr. McCracken supports his design defect claim with RJR's interrogatory

response it used ammoniated reconstituted tobacco in its Kool King cigarettes from 1993 through 2001, six documents from various sources detailing the effects of ammonia, and medical reports. None of this evidence shows ammoniated reconstituted tobacco in Kool King cigarettes is a design defect causing his damages.

### i. Mr. McCracken's documentary evidence.

Mr. McCracken attaches six documents to his supplement. The documents are: (1) statements of public health authorities from the U.S. Department of Health and Human Services ("HHS") and Food and Drug Administration ("FDA") regarding the tobacco industry's use of ammonia; (2) an Associated Press article; (3) an FDA report in the Federal Register describing how ammonia can increase the amount of nicotine smokers absorb; (4) additional public health authority statements on the tobacco industry's use of ammonia; (5) an Oregon Graduate Institute of Science and Technology article; and (6) a Washington Post article.[80] The Federal Register report and authorities' statements include findings "cigarette manufacturers manipulate and control nicotine deliveries through the use of ammonia compounds."[81] They also include findings "[a]mmonia compounds alter the pH of nicotine in tobacco,"[82] allowing it to "more readily enter[] the smoke stream."[83]

We cannot consider hearsay on summary judgment.[84] Mr. McCracken makes no arguments regarding the admissibility of these documents. The Associated Press article, Oregon Graduate Institute of Science and Technology article, and Washington Post article all constitute hearsay to which no exceptions apply, so we cannot consider them.[85] But we may consider some portions of the Federal Register report and public statements because the Federal Rules of Evidence provide an exception. Under Rule 803(8), a "record or statement of a public official if it sets out . . . a matter observed while under a legal duty to report" is excepted from the hearsay

11

rules.[86] Congress requires us to take judicial notice of the contents of the Federal Register.[87] Still, some portions of these documents contain hearsay-within-hearsay, which we cannot consider at summary judgment unless both layers of hearsay are admissible.[88] For instance, portions of the documents cite a tobacco company handbook and unnamed industry documents.[89]

Mr. McCracken's supplemental documents do not show nicotine manipulation caused Mr. McCracken's addiction, COPD, or emphysema—they only show the tobacco industry as a whole used ammonia to increase the nicotine's effects upon persons using the tobacco. Mr. McCracken "cannot prove causation by merely showing that smoking cigarettes causes cancer and other diseases."[90] He must prove a defect in the cigarettes caused *his* diseases or addiction, and he must prove "*which* defendant caused that addiction."[91] Mr. McCracken's documentary evidence does neither. None of the documents discuss ammonia's effect on addiction. Nor do they specifically discuss King Kool cigarettes specifically. They merely show some tobacco companies used ammonia to enhance their cigarettes' nicotine delivery. On this record, we may only speculate as to how the use of ammonia causes health problems or addiction. The documents do not create a genuine issue of material fact as to causation.

### ii. Mr. McCracken's medical records.

Mr. McCracken attaches medical records from Drs. Brown and Dovnarsky in another attempt to prove a design defect caused his harms. The medical records do not create a genuine issue of material fact because they do not prove a *defect* caused his harms—they only suggest smoking *in general* caused his harms. Neither Dr. Brown nor Dr. Dovnarsky opined as to how a defective design in the cigarettes caused Mr. McCracken's emphysema, COPD, or addiction. Dr. Brown only references "smoking" and Dr. Dovnarsky only references "chronic tobacco use." As a result, the record lacks evidence regarding how the manufacturers' use of ammoniated tobacco

caused Mr. McCracken's harms. On the other hand, the manufacturers presented competent expert testimony from Dr. Agharkar showing Mr. McCracken did not have a tobacco use disorder, and from Dr. Garner showing RJR did not use ammoniated tobacco to increase the addictiveness of its cigarettes. We also have no competent evidence ammoniated tobacco made him an addict.

These records bear close resemblance to those from Judge Kelly's decision in *Mracek v. Bryn Mawr Hospital*,[92] where he granted summary judgment to the defendant on a products liability claim after the plaintiff failed to adduce evidence of causation. The plaintiff sued a hospital, alleging a robotic device it used to perform surgery had a defect which caused the plaintiff erectile dysfunction.[93] Plaintiff adduced doctors' reports and argued the doctors would testify at trial regarding the mechanical problems with the robot and the difference between plaintiff's pre- and post-surgery conditions.[94] Judge Kelly agreed the doctors could testify at trial, but their ability to testify did "not relieve [plaintiff] of his burden to produce evidence of causation in defending a motion for summary judgment."[95] In their reports, the doctors "never opined . . . that the surgical problems with the robot caused [plaintiff's] erectile dysfunction."[96] Finding plaintiff "failed to produce any evidence of causation," Judge Kelly granted summary judgment to the defendant.[97]

Much like the *Mracek* plaintiff, Mr. McCracken has submitted doctors' reports showing diagnoses of emphysema and COPA and tobacco use disorder. But, just as the *Mracek* plaintiff's doctors' reports failed to show a defect, Mr. McCracken's doctors' reports have failed to show how a defect in the manufacturers' cigarettes caused any of his ailments.[98]

As a result, Mr. McCracken "has failed to produce any evidence of causation,"[99] and summary judgment on the design defect claim is appropriate for the manufacturers.

13

**B. We grant the manufacturers' summary judgment motion on the failure to warn claim due to a lack of causation evidence.**

Mr. McCracken has not adduced evidence necessary to overcome the manufacturers' arguments seeking judgment on the failure to warn claim against Republic. "Under Pennsylvania law, a plaintiff in a failure to warn case must establish that 1) a warning of a particular product was either lacking or inadequate, and 2) the user of the product would have avoided the risk had he been advised of it by the seller."[100]  A plaintiff "must also show causation in a failure-to-warn claim by demonstrating 'the user of the product would have avoided the risk had he or she been warned of it by the seller.' "[101]  "When the dangers of a product are or should be known to the user, liability cannot be imposed on the manufacturer for failure to warn of the danger."[102]

Mr. McCracken seeks summary judgment on his failure to warn claim against Republic for the years 1966 through 1969 based on its responses to interrogatories. Republic admits it did not place warnings on packages of Top products in those years. It stated it did not include warnings smoking could cause emphysema or Top products contained tar, nicotine, or carcinogens. Mr. McCracken cites inadmissible hearsay, a book, to argue about the dangers of cigarettes. Two responses to interrogatories and inadmissible hearsay are insufficient to establish entitlement to summary judgment because they do not show Republic failed to warn of a danger or the failure to warn caused Mr. McCracken's harm as a matter of law.

Mr. McCracken admits under oath he knew the dangers associated with smoking cigarettes. He recalled seeing the Surgeon General's warnings: "Warning: Cigarette smoking may be dangerous to your health" on cigarette packs beginning in 1966, but he "didn't pay much attention to it." Mr. McCracken testified he thought "six or seven" different warnings appeared on cigarette packs. He also testified to his awareness cigarette packs contained warnings cigarettes caused heart disease, lung cancer, and emphysema. Several people close to Mr. McCracken, including his

14

father, mother, and brother, told him to quit smoking when he began in the 1960's because of its negative health effects. Later, Ms. McCracken and Mr. McCracken's doctor told Mr. McCracken they wanted him to stop smoking. In addition to Mr. McCracken's deposition testimony, the manufacturers presented expert testimony Mr. McCracken would have known smoking could present health dangers in the 1960's. Despite all this, Mr. McCracken smoked about a pack a day until 2015.

We are guided by our Court of Appeals' decision in *Jeter v. Brown & Williamson Tobacco Corp.*, affirming summary judgment on a similar failure to warn claim. The plaintiff testified his parents told him about the health risks of smoking, he learned about them in school, and he knew of the Surgeon General's warnings but paid them no mind. Our Court of Appeals held "[a] finding that an additional warning from [defendant manufacturer] would have deterred [plaintiff] from smoking would be nothing more than a guess that has no support in his actual behavior."[103] We follow our Court of Appeals' reasoning in *Jeter*.

Given Mr. McCracken's admitted awareness of the health risks associated with smoking and his long smoking history, we find no genuine issue of material fact additional warnings would have made Mr. McCracken stop smoking. Mr. McCracken failed to show how the specific warnings he says the cigarettes needed—product information data, the ingredients contained within the products, and general warnings about smoking—would have deterred him from smoking. To the contrary, Mr. McCracken's "actual behavior" indicates he ignored warnings for decades. He instead alleges the manufacturers designed the tobacco products to turn him into a nicotine addict. Accepting his argument, his addiction would have led him to use tobacco regardless of the warnings. There is no evidence the failure to warn caused him harm.

We grant summary judgment to the manufacturers on Mr. McCracken's failure to warn claim.

## C. We grant the manufacturers' summary judgment motion on the intentional infliction of emotional distress claim.

Mr. McCracken plead a claim for intentional infliction of emotional distress in his Third Amended Complaint.[104] A plaintiff seeking to recover under an emotional distress claim must "demonstrate intentional outrageous or extreme conduct by the defendant, which causes severe emotional distress to the plaintiff."[105] A plaintiff must suffer some resulting harm from the defendant's outrageous conduct.[106] "Liability on an intentional infliction of emotional distress claim 'has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' "[107] Additionally, the "existence of the alleged emotional distress must be supported by competent medical evidence."[108] Mr. McCracken argues he incurred severe emotional distress as a result of his COPD and emphysema diagnosis because his ailments are "akin to having both legs and one of the lungs amputated."[109]

Mr. McCracken's emotional distress claim fails because he does not adduce medical evidence showing he suffered emotional distress. His medical records say nothing about emotional harm or distress. To the contrary, Dr. Brown noted Mr. McCracken exhibited a normal mood and affect.[110]

Even if Mr. McCracken had presented medical evidence, his emotional distress claim would still fail because he has not shown the manufacturers exhibited outrageous or atrocious conduct. Mr. McCracken failed to adduce evidence showing why the manufacturers' use of ammonia or their failure to include certain warnings caused him harm, let alone evidence the

manufacturers' practice constituted outrageous or atrocious conduct.[111] We grant summary judgment to the manufacturers on the emotional distress claim.

## D. We grant the manufacturers summary judgment on the consortium claim.

Ms. McCracken seeks damages for loss of consortium although she never appeared for depositions. She adduced no evidence. "In Pennsylvania, a loss of consortium means a loss of the company, society, cooperation, affection and aid of a spouse in every conjugal relation."[112] "A wife who suffers a loss of consortium does not herself sustain physical injury, but rather, damaged marital expectations as a result of the injuries to her husband."[113]

Ms. McCracken's loss of consortium claim is "derivative, i.e. depend[e]nt on the success of the underlying claim asserted by her injured husband."[114] Mr. McCracken's underlying claims all fail, so Ms. McCracken's derivative loss of consortium claim must also fail.

## III. Conclusion

In the accompanying Order, we grant summary judgment in favor of the manufacturers on Mr. McCracken's claims of design defect, failure to warn, and intentional infliction of emotional distress.[115] We also enter summary judgment in favor the manufacturers on Ms. McCracken's consortium claim.

---

[1] Our Policies require a Statement of Undisputed Material Facts ("SUMF") and an appendix in support of summary judgment. The manufacturers submitted a SUMF and an appendix (ECF Doc. No. 158, "MSJ App"). Mr. McCracken submitted an appendix attached to a motion for extension of time to respond to the manufacturers' motion for summary judgment (ECF Doc. No. 168, "MSJ App"). Mr. McCracken submitted a Statement of Undisputed Material Facts on February 7, 2019 (ECF Doc. No. 178).

[2] ECF Doc. No. 168 at MSJ App 1044, 1067.

[3] ECF Doc. No. 159 at ¶ 1. In 2003, RJR acquired Brown & Williamson, the company manufacturing Kool cigarettes. ECF Doc. No. 156 at ¶ 2. ITG acquired the rights to Kool

cigarettes from RJR in 2015. ECF Doc. No. 156 at ¶ 2. Republic produced Top roll-your-own cigarettes. ECF Doc. No. 90 at ¶ 3.

[4] ECF Doc. No. 159 at ¶ 2.

[5] ECF Doc. No. 159 at ¶ 6.

[6] ECF Doc. No. 158 at MSJ App 008, 284–85.

[7] ECF Doc. No. 168 at MSJ App 1047–49.

[8] ECF Doc. No. 168 at MSJ App 1047.

[9] ECF Doc. No. 168 at MSJ App 1048.

[10] ECF Doc. No. 168 at MSJ App 1048.

[11] ECF Doc. No. 168 at MSJ App 1070.

[12] ECF Doc. No. 168 at MSJ App 1071.

[13] ECF Doc. No. 168 at MSJ App 1071.

[14] ECF Doc. No. 158 at MSJ App 216.

[15] ECF Doc. No. 158 at MSJ App 217.

[16] ECF Doc. No. 158 at MSJ App 217.

[17] ECF Doc. No. 158 at MSJ App 218.

[18] ECF Doc. No. 158 at MSJ App 128–30.

[19] ECF Doc. No. 158 at MSJ App 083.

[20] ECF Doc. No. 158 at MSJ App 254.

[21] ECF Doc. No. 180.

[22] ECF Doc. No. 168 at MSJ App 1157.

[23] ECF Doc. No. 168 at MSJ App 1157.

[24] ECF Doc. No. 158 at MSJ App 446–47.

[25] ECF Doc. No. 158 at MSJ App 446.

[26] ECF Doc. No. 158 at MSJ App 483.

[27] ECF Doc. No. 168 at MSJ App 1080.

[28] ECF Doc. No. 168 at MSJ App 1081.

[29] ECF Doc. No. 158 at MSJ App 592.

[30] ECF Doc. No. 158 at MSJ App 590–93.

[31] ECF Doc. No. 52; ECF Doc. No. 79.

[32] ECF Doc. Nos. 89, 90.

[33] ECF Doc. No. 158 at MSJ App 081.

[34] ECF Doc. No. 158 at MSJ App 081.

[35] ECF Doc. No. 158 at MSJ App 085.

[36] ECF Doc. No. 156; ECF Doc. No. 159. Summary judgment is proper when "the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those that could affect the outcome of the proceeding, and a dispute about a material fact is genuine if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (internal quotations omitted). On a motion for summary judgment, "we view the facts and draw all reasonable inferences in the light most favorable to the nonmovant." *Id.* at 533–34 (citing *Scott v. Harris*, 550 U.S. 372, 378 (2007)). "The party seeking summary judgment 'has the burden of demonstrating that the evidentiary record presents no genuine issue of material fact.'" *Parkell v. Danberg*, 833 F.3d 313, 323 (3d Cir. 2016) (quoting *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015)). If the movant carries its burden, "the nonmoving party must identify facts in the record that would enable them to make a sufficient showing on essential elements of their case for which they have the burden of proof." *Willis*, 808 F.3d at 643 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "If, after adequate time for discovery, the nonmoving party has not met its burden, pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against the nonmoving party." *Id.* at 643 (citing *Celotex*, 477 U.S. at 322–23). Because Mr. McCracken is proceeding *pro se*, we will read his "papers liberally and interpret[] them to raise the strongest arguments suggested therein." *Hodson v. Alpine Manor, Inc.*, 512 F. Supp. 2d 373, 384–85 (W.D. Pa. 2007). "Despite this liberal interpretation, however, a bald assertion, unsupported by evidence, cannot overcome a properly supported motion for summary judgment." *Id.*

[37] ECF Doc. No. 165; ECF Doc. No. 172.

[38] *See* ECF Doc. No. 180. Mr. McCracken labeled the documents "Supplement to Appendix to Plaintiff's Motion for Summary Judgment." We liberally construe his *pro se* filing as a Supplement to Plaintiff's Opposition to Summary Judgment in compliance with our January 29, 2019 Order. ECF Doc. No. 165.

[39] 449 F. Supp. 2d 1 (D.D.C. 2006), *rev'd in part*, 566 F.3d 1095 (D.C. Cir. 2009).

[40] *Burlington N. R. Co. v. Hyundai Merch. Marine Co.*, 63 F.3d 1227, 1231 (3d Cir. 1995) (internal quotations omitted) (citing *Montana v. United States*, 440 U.S. 147, 153 (1979)).

[41] *Id.* at 1231–32 (alterations in original) (internal quotations omitted).

[42] *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 248 (3d Cir. 2006).

[43] *In re Light Cigarettes Mktg. Sales Practices Litig.*, 691 F. Supp. 2d 239, 243 (D. Me. 2010).

[44] *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 330 (1979).

[45] *Id.* at 330–31.

[46] 449 F. Supp. 2d 1 (D.D.C. 2006), *rev'd in part*, 566 F.3d 1095 (D.C. Cir. 2009).

[47] *Philip Morris*, 449 F. Supp. 2d at 27 (D.D.C. 2006).

[48] *Id.* at 28.

[49] *Id.*

[50] *Id.* at 27.

[51] *Id.* at 853–54.

[52] *See id.* at 309.

[53] *Id.* at 260.

[54] *Id.* at 312–14.

[55] ECF Doc. No. 159 ¶ 1.

[56] ECF Doc. No. 159 ¶ 3.

[57] *Schwab v. Philip Morris USA, Inc.*, 449 F. Supp. 2d 992, 1078 (E.D.N.Y. 2006), *rev'd sub nom. McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215 (2d Cir. 2008).

[58] *Pooshs v. Philip Morris USA, Inc.*, 904 F. Supp. 2d 1009, 1034 (N.D. Cal. 2012); *see also Shaffer v. R.J. Reynolds Tobacco Co.*, 860 F. Supp. 2d 991, 995–96 (D. Ariz. 2012); *In re Light Cigarettes Mktg. Sales Practices Litig.*, 691 F. Supp. 2d 239, 249 (D. Me. 2010); *Grisham v. Philip Morris, Inc.*, 670 F. Supp. 2d 1014, 1031–37 (C.D. Cal. 2009); *Schwab*, 449 F. Supp. 2d at 1077–79; *Evans v. Lorillard Tobacco Co.*, 990 N.E.2d 997, 1006–07 (Mass. 2013); *Curtis v. Altria Grp., Inc.*, 792 N.W.2d 836, 855 (Minn. Ct. App. 2010), *rev'd on other grounds*, 813 N.W.2d 891 (Minn. 2012).

[59] *In re Light Cigarettes*, 691 F. Supp. 2d at 249.

[60] The Court of Appeals for the District of Columbia Circuit affirmed the relevant portions of Judge Kessler's opinion. *See United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1118–22 (D.C. Cir. 2009).

[61] *See, e.g.*, *Shaffer*, 860 F. Supp. 2d at 997 ("Other than referencing and string citing approximately 749 findings of fact from the DOJ Case, Plaintiff has not specifically explained how the findings of fact at issue were actually necessary to the final judgment in the case such that preclusion could attach. As such, as Plaintiff has failed to meet her burden on this issue, the Court finds that offensive nonmutual issue preclusion is inappropriate in this case."); *In re Light Cigarettes*, 691 F. Supp. 2d at 250 ("Although certain specific findings are arguably relevant to liability in the current case, the Plaintiffs have not established how these findings were central to the *DOJ* decision. In their Appendix, the Plaintiffs organize these findings in relation to each of the Plaintiffs' four main arguments, but they do not attempt to explain *how* the findings were central."); *Grisham*, 670 F. Supp. 2d at 1032 ("In short, Plaintiff has failed to m[e]et her burden of explaining how the 2,600 quoted findings were outcome determinative with respect to Defendants in the previous case. Without such a showing, the Court cannot deem these findings to be conclusively established in the present case.").

[62] *Philip Morris*, 449 F. Supp. 2d at 853 (D.D.C. 2006) (emphasis added).

[63] *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 255 (3d Cir. 2006).

[64] *Grisham*, 670 F. Supp. 2d at 1031 (alteration in original); *see also Ginsburg, ex rel. The Vertical Grp., Inc. v. Birenbaum*, No. ADV 05-2506, 2009 WL 304045, at *8 (W.D. Pa. Feb. 9, 2009).

[65] *Grisham*, 670 F. Supp. 2d at 1032.

[66] *Id.*

[67] *Hodson v. Alpine Manor, Inc.*, 512 F. Supp. 2d 373, 384–85 (W.D. Pa. 2007).

[68] *See, e.g.*, *Shaffer v. R.J. Reynolds Tobacco Co.*, 860 F. Supp. 2d 991, 996 (D. Ariz. 2012) (collecting cases where juries returned defense verdicts or were hung in cases with similar allegations and noting "RJR argues, for example, that it has secured decisions in its favor in at least . . . 19 cases involving allegations relating to nicotine addiction and manipulation.").

[69] *Schwab v. Philip Morris USA, Inc.*, 449 F. Supp. 2d 992, 1079 (E.D.N.Y. 2006), *rev'd sub nom. McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215 (2d Cir. 2008)

[70] ECF Doc. No. 33 at 1.

[71] *Igwe v. Skaggs*, 258 F. Supp. 3d 596, 609 (W.D. Pa. 2017) (quoting *High v. Pennsy Supply, Inc.*, 154 A.3d 341, 345–46 (Pa. Super. 2017)).

[72] *Id.* at 610 (quoting *Tincher*, 104 A.3d at 387).

[73] *Id.* (quoting *Tincher*, 104 A.3d at 389).

[74] *Id.* at 609 (quoting *Tincher v. Omega Flex, Inc.*, 104 A.3d 328, 335 (Pa. 2014)).

[75] *Oddi v. Ford Motor Co.*, 234 F.3d 136, 159 (3d Cir. 2000).

[76] *Lamar v. Saks Fifth Ave., Inc.*, No. 2:12-CV-836, 2012 WL 12897909, at *2 (E.D. Pa. Oct. 23, 2012).

[77] *Id.*

[78] *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 145 (3d Cir. 1998).

[79] *Barnes v. Am. Tobacco Co.*, 176 F.R.D. 479, 501 (E.D. Pa. 1997) (quoting *Arch v. Am. Tobacco Co.*, 175 F.R.D. 469, 488 (E.D. Pa. 1997)), *aff'd*, 161 F.3d 127 (3d Cir. 1998).

[80] ECF Doc. No. 180 at MSJ App 1165–79.

[81] ECF Doc. No. 180 at MSJ App 1167.

[82] ECF Doc. No. 180 at MSJ App 1165.

[83] ECF Doc. No. 180 at MSJ App 1165.

[84] *Smith v. City of Allentown*, 589 F.3d 684, 693 (3d Cir. 2009) ("Hearsay statements that would be inadmissible at trial may not be considered for purposes of summary judgment.").

[85] *See Barnes Found. v. Twp. of Lower Merion*, 982 F. Supp. 970, 995–96 (E.D. Pa. 1997) (declining to consider a newspaper article on summary judgment because it "presents an obvious hearsay problem").

[86] Fed. R. Evid. 803(8).

[87] 44 U.S.C. § 1507.

[88] *Smith*, 598 F.3d at 693.

[89] ECF Doc. No. 180 at MSJ App 1167, 1174.

[90] *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 145 (3d Cir. 1998).

[91] *Barnes v. Am. Tobacco Co.*, 176 F.R.D. 479, 501 (E.D. Pa. 1997) (emphasis added) (quoting *Arch v. Am. Tobacco Co.*, 175 F.R.D. 469, 488 (E.D. Pa. 1997)), *aff'd*, 161 F.3d 127 (3d Cir. 1998).

[92] 610 F. Supp. 2d 401 (E.D. Pa. 2009), *aff'd*, 363 F. App'x 925 (3d Cir. 2010).

[93] *Mracek*, 610 F. Supp. 2d at 407.

[94] *Id.* at 406.

[95] *Id.* at 406–07.

[96] *Id.* at 407.

[97] *Id.*

[98] *See also Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 165 (3d Cir. 1999) (affirming grant of summary judgment based on plaintiff's "total lack of causation evidence absent [excluded] expert testimony.").

[99] *Mracek*, 610 F. Supp. 2d at 407.

[100] *Jeter v. Brown & Williamson Tobacco Corp.*, 113 F. App'x 465, 467–68 (3d Cir. 2004).

[101] *Igwe v. Skaggs*, 258 F. Supp. 3d 596, 612 (W.D. Pa. 2017) (quoting *Phillips v. A-Best Prod. Co.*, 665 A.2d 1167, 1171 (1995)).

[102] *Jeter*, 113 F. App'x at 468.

[103] *Id.* at 468.

[104] ECF Doc. No. 90 at 28.

[105] *Swisher v. Pitz*, 868 A.2d 1228, 1230 (Pa. Super. Ct. 2005).

[106] *Id.*

[107] *Wardlaw v. Newsome*, No. 08-2536, 2015 WL 1312028, *2 (E.D. Pa. Mar. 23, 2015) (quoting *Field v. Phila. Elec. Co.*, 565 A.2d 1170, 1184 (Pa. Super. Ct. 1989)).

[108] *Kazatsky v. King David Mem'l Park Inc.*, 527 A.2d 988, 197 (Pa. 1987); *Martin v. City of Reading*, 118 F. Supp. 3d 751, 768 (E.D. Pa. 2015).

[109] ECF Doc. No. 164 at 4.

[110] ECF Doc. No. 168 at MSJ App 1069.

[111] *See Wardlaw*, 2015 WL, at *3 (E.D. Pa. Mar. 23, 2015) (granting summary judgment on IIED claim where plaintiff failed to adduce medical evidence and failed to show outrageous conduct).

[112] *Pahle v. Colebrookdale Twp.*, 227 F. Supp. 2d 361, 374–75 (E.D. Pa. 2002).

[113] *Id.* at 375.

[114] *Id.*

[115] The manufacturers also argue Mr. McCracken failed to file his claims within the two-year statute of limitations. *See* ECF Doc. No. 156 at 15–23; ECF Doc. No. 166. The manufacturers argue Mr. McCracken filed his complaint more than two years after he knew or should have known he developed emphysema. Because we grant summary judgment to the manufacturers on the merits of the claims, we need not address the statute of limitations argument.